# SETH WADHAMS *et al.*

## *v.*

# LUCY C. FLAGLER GAY.

1. AGREEMENT—*construed as not making any charge on land.* Where, upon the execution of deeds for the partition of lands under a decree of partition, one of the parties executed an agreement to the others, that the land conveyed to him was and should be subject to the interest of his children in the same under a certain will, and that the interest of such children under the will should be charged upon the land conveyed to such party, etc., it was *held,* that this created, of itself, no charge upon the land in favor of the party's children, and was not designed for their benefit, but for the benefit of the other parties in the partition.

2. CONVEYANCE—*inuring of title.* Where a party makes a conveyance purporting to convey an estate in fee simple to another, and by decree of court his title is confirmed or perfected, it will pass to his grantee, under the statute.

3. JUDICIAL SALE—*innocent purchaser not affected by reversal of judgment or decree.* If a judgment or decree is reversed the parties thereto are to be restored to their original rights, so far as it can be done without prejudice to the rights of third persons. But the title of third persons to property acquired under an erroneous judgment or decree, is not affected by its reversal.

4. PURCHASER *under decree confirming title.* The same principle applies to judgments and decrees which simply declare and vest legal rights in the party claiming the same, where no sale is ordered; and a purchaser from such party, while such judgment or decree remains in full force, upon the faith of its validity, before any writ of error is prosecuted, or other legal steps taken to avoid the same, will not be affected by a subsequent reversal of the judgment or decree, but will be protected in his title, and this though made a party to the proceeding to reverse.

73 415
30a 123
30a 282

73 415
131 168

73 415
35a 307
37a 605

73 415
41a 218

73 415
153 204
153 288

73 415
160 156
161 600

73 415
46a 538

73 415
54a 212
57a 467
57a 498
58a 539

73 415
60a 662

73 415
168 392

73 415
174 524

73 415
178 504

73 415
184 537

73 415
205 13 270

73 415
209 15 64
e111a 6 450

5. DECREE—*against infant is absolute.* It is not the practice in this State to make a decree against infants conditional, or to give them a day in court on arriving at their majority, but such decree is absolute in the first instance.

6. ATTORNEY AT LAW—*his powers.* An attorney at law has no implied authority to compromise or give up any right of his client, or to consent to a judgment against his client.

7. PARTITION—*effect of deeds, etc., as ratifying decree.* Where the answer of a party to a bill for partition of land was filed without authority, admitting he was entitled only to a life estate under a will, and the decree appeared to be entered by consent, and found that he was entitled to a life estate with remainder in his children, as to a certain part, and deeds were interchanged to carry out the partition, his deed being absolute, but a separate agreement was executed by him and the other parties, in which it was provided that his share should be subject to such interest as his children had under the will and the decree: *Held,* that the deeds and agreement were simply a ratification of the partition, but not of the decree limiting his estate and finding a remainder in his children.

8. PARTITION IN EQUITY—*decree must be executed by conveyances.* A partition of an estate in chancery is not finally completed until mutual conveyances are executed of the several allotments made to the respective parties. The decree in such case is *in personam,* and if one of the parties is not competent to execute a conveyance, a partition can not be effectually had in equity, and before our statute of 1861 a mere decree in chancery could not pass the legal title to land.

9. SAME—*effect of decree for, in equity.* Where a decree on a bill for partition extended no further than merely to make the partition as had been previously agreed upon, but made no provision for conveyances, or for giving possession, or for enjoyment, it was *held* imperfect, and to have left the division incomplete; but this was obviated by the mutual interchange of deeds each to the other. But where the decree further found that one of the parties had only a life estate with remainder in his children, and failed to provide for any conveyance to the children, as it might have done, it was *held,* that, in this respect, it was incapable of being executed until the necessary authority should be given by a further order, or until a new bill was filed to supply the omission to provide for its execution.

10. CHANCERY—*bill to carry decree into execution.* Where a decree expresses a purpose that the children of a party to a bill for partition, shall have the fee after the party's death, without accomplishing the object by its own force, or providing the means for effecting its accomplishment, an original bill may lie to carry the former decree into execution.

11. SAME—*when a former decree will not be executed.* On original bill to carry a former decree into execution, the court may look into the original

case and see if the former decree is equitable and just, and if it is not, refuse its enforcement.

12. Where a decree of partition, in defining one party's interest under a will, found, erroneously, that he had only a life estate as to one-sixth of the land, and that the remainder was in his children, when, in fact, the will gave him the absolute title, and although the decree appeared to have been by consent, when the proof showed that such was not true, the court *held*, on bill by his heirs, after his death, against his grantee to have the original decree carried into effect, that the relief should not be granted.

13. Gift—*not enforcible in equity.* A court of equity will not enforce a a voluntary contract, or an unexecuted gift. Where the transaction is incomplete, and there is no consideration, the court, on general principles, will not complete what it finds imperfect.

14. The same principle applies to an executory decree in its nature a family settlement. A gift capable of being made by a legal conveyance, is as imperfect when created by an executory decree, as if by an executory contract. When the title is of a legal interest, capable of a legal transfer, an executory decree, providing within itself no means for its execution, seems to be an imperfect creation of a trust or gift, even if such had been intended, and when voluntary is subject to revocation.

15. Res adjudicata—*what is.* *Res adjudicata* is the decision of the court upon a contested matter between parties. When a judgment or decree is rendered by consent, or is the result of a compromise, it can not be admitted as *res adjudicata.*

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

Messrs. Ayer & Kales, for appellant Wadhams.

Messrs. Upton, Boutell & Waterman, for appellants Christian S. and Augusta M. Engle, and Calvin Day.

Messrs. Goudy & Chandler, and Mr. Arthur M. Windett, for the appellees.

Mr. Justice Sheldon delivered the opinion of the Court:

A rehearing having been granted in this case, and a full re-argument had, we find reason, on further deliberate consideration, to modify our former decision.

We are satisfied that, as respects the appellants Engles and Day, we underestimated the strength of their position as pur-

418 WADHAMS *et al. v.* GAY. [Sept. T.

Opinion of the Court.

chasers under the decree on the bill of review, whilst such decree was in force, and before any step had been taken to reverse it.

Under the will of Augustus Garrett, and the subsequent happening of the contingencies therein named, Charles D. Flagler became vested with an estate in fee in these lands. ·It was so decided by this court before, in *Flagler* v. *Crow*, 40 Ill. 414, that under the will, he " was clearly entitled to the fee." On the 17th day of February, 1853, and the 18th day of January, 1854, Flagler, by warranty deeds, conveyed the lands to Wadhams and Moses, the deeds purporting to convey the whole estate in fee. It is this Moses interest which is claimed and held by the Engles and Day, their title depending partly on deeds and a mortgage from Moses, and partly on execution sales on judgments against him; which deeds, mortgage, judgments and sales were of a date subsequent to the decree on the bill of review, and prior to the suing out of the writ of error to reverse that decree. Why did not the deeds from Charles D. Flagler to Moses convey to the latter the entire estate in the lands purported to be conveyed to him? Because, only, of the decree in the partition suit between the devisees of Garrett, rendered May 26, 1851, which is claimed to have fixed the interest of Flagler in the lands as only a life estate, and that of his children as the remainder in fee.

We say because only of such decree, as on a more critical examination of the agreement of May 29, 1851, which has been somewhat relied on as an instrument whereby Charles D. Flagler parted with some portion of his interest under the will, we do not think it should be deemed to have such effect.

The portion of that agreement claimed as having such operation, is as follows:

" And the lands so deeded to Letitia Flagler and Charles D. Flagler, are to be, and are, subject \* \* \* to the whole and entire interest of the child and children, and the descendant and descendants thereof, of Charles D. Flagler, which herein may survive in said estate of said Garrett, which, *under said will*, such child, children, descendant or descendants may have,

or at any time be entitled to, which said interest of such child or children, or descendants, is hereby declared and agreed to be charged upon the lands in said deed to said Letitia and Charles D. Flagler, mentioned.

" And said Letitia and Charles D. Flagler, and Frederick T. Flagler, husband of said Letitia, hereby assume to satisfy said interest of any such child or children, or descendants thereof, which they may be entitled to, under and by the terms of said will, and to save and keep harmless the share of and portions of said real estate, so deeded to said Eliza Garrett, James Crow and Thomas G. Crow, from all claim and claims which any such child or children of said Charles D. Flagler may have or become entitled to, under said will, or *the decree of any court* now made, or hereafter to be made."

The deeds accompanying this agreement were simple deeds of release, by which Mrs. Garrett, the Crows, and the Flaglers, each released all interest in the land assigned to the others by the partition decree. It is not our reading of this agreement, that Charles D. Flagler thereby declares the land in question charged with the interest of his children under the partition decree. The first above sentence of the agreement describes the burdens with which the land allotted to the Flaglers is charged, and the only interests of the children charged upon the land, are those which, " under said will," they may have or be entitled to. The second sentence contains two covenants. By the first one, the Flaglers assume to satisfy said interest of any such child or children, which they may be entitled to " under and by the terms of said will." By the second covenant, the Flaglers agree to save and keep harmless the lands allotted to Mrs. Garrett, and the Crows, from all claims of such children under said will, or the decree of any court then made or thereafter to be made,

This is the only place in the agreement where any mention is made of this decree. This covenant is not made with the children of Charles D. Flagler, or with trustees for their benefit, and its object is not to protect their rights. It is made with Mrs. Garrett and the Crows, and made simply to protect

them. Its object is not to impose a burden on the land of the covenantors, but to confer a benefit on the land of the covenantees. While it is an agreement to save Mrs. Garrett and the Crows harmless from any claim the children of Charles D. Flagler may have under the decree, it does not admit that these children actually have any claim under the decree, and does not declare that the land is subject to any such claim. To hold, that, by force of this agreement, Charles D. Flagler abridged any of his rights in the lands, or parted with them to his children, is, in our view, a misconstruction of the instrument. Letitia Flagler was the mother of Charles D. He had but two children at the time, who were infants, the eldest, the original complainant in this suit, being but two years of age, the other six months.

The decree, then, in the partition suit, which purported to reduce Charles D. Flagler's interest in the land to a life estate, and to give the remainder in fee to his children, being the only hindrance to the passing of the entire estate in the lands to Moses by the warranty deeds to him from Flagler, under the contingencies which afterward happened, that impediment was removed by the decree on the bill of review afterward brought by Charles D. Flagler, in which bill he alleged error appearing on the face of the record in the former decree in the partition suit, in that the decree gave Charles D. Flagler only a life estate, when, by the will, he was entitled to a fee. The decree entered on the bill of review April 11, 1854, reversed the former decree in the partition suit, in the above respect, and adjudged and decreed a remainder in fee to be vested in Charles D. Flagler in accordance with the provisions of the will.

Our statute provides that, if any person shall sell and convey to another by deed purporting to convey an estate in fee simple absolute in land, not being then possessed of the legal estate or interest therein, but shall afterward become possessed thereof, the conveyance shall be as valid as if the grantor had the legal estate or interest at the time of the conveyance.

By the will of Garrett, an estate in fee, and not for life only,

was limited to Charles D. Flagler, to take effect in him in case he survived the wife and two sisters of the testator. If he did not survive them, the same estate in fee was to go to his children who then survived, and if there were none, then over in fee to James and Thomas G. Crow.

On the 8th of February, 1856, the contingency happened, by which, according to the will and the decree on the bill of review, the remainder of Charles D. Flagler became a present vested estate in fee simple, which contingency was, the falling in of the three lives of Mrs. Garrett and the two sisters of the testator by the death on that day of the surviving one of them, leaving Charles D. Flagler surviving.

By force whereof, and the decree on the bill of review, the entire estate at once enured to Moses through the warranty deed of Flagler to him, which might be held by Moses himself, so long as the bill of review decree remained unreversed, with the capability of purchasers from him, and creditors, acquiring from him an indefeasible estate, so long as the last named decree remained in force and unreversed, or, at least, until the commencement of proceedings to reverse it. If the original decree in the partition suit gave to Charles D. an estate for life, with remainder in fee to his children, that decree was annulled by the decree on the bill of review, and the latter decree gave to him a remainder in fee in the premises, in accordance with the provisions of the will. This decree on the bill of review remained in force until February 24, 1866, when a writ of error was sued out from this court to reverse the same, and the same was reversed at the April term, 1866. As before remarked, the Engles and Day derive title by purchase from and through other purchasers from Moses, or at judicial sales under judgments and a mortgage against him, all which were made and had intermediate the time of the rendition of the decree on the bill of review and the suing out of the writ of error for its reversal. Such purchases, having been in good faith for value, in reliance on the validity of this decree on the bill of review, are entitled to the protection of the court.

In *McJilton* v. *Love*, 13 Ill. 494, the well settled law is recognized and declared. that, if a judgment is reversed, the parties are to be restored to their original rights, so far as it can be done without prejudice to third persons. But the rights of third persons are not affected. Their title to property acquired under an erroneous judgment is not divested by its reversal. To the same effect is *McLagan* v. *Brown*, 11 Ill. 519; *Goudy* v. *Hall*, 36 id. 319; *Feaston* v. *Fleming*, 56 id. 457; *Simms* v. *Slocum*, 3 Cranch, 300; *Voorhess* v. *The Bank of the United States*, 10 Pet. 475; *Gray* v. *Brignardello*, 1 Wall. 634.

Nor is this principle confined to the case of judicial sales, as being founded on the public policy of sustaining such sales. The same principle applies to judgments and decrees which simply declare and vest the legal right in the party claiming it, where no sale has been had.

In *Horner* v. *Zimmerman*, 45 Ill. 14, the principle was recognized in a case where there had been a decree of strict foreclosure of a mortgage, that a *bona fide* purchaser for value from the mortgagee, after the decree, could not be affected by any error in the decree.

In *Guiteau* v. *Wisely*. 47 Ill. 433, where a party to an erroneous judgment had purchased at a sale thereunder and afterward conveyed to a *bona fide* purchaser, and subsequently the judgment was reversed, it was held that such *bona fide* purchaser would not be affected by the reversal.

The principle is, as said in *Goudy* v. *Hall, supra:* Society should be able to rely upon the judgments and decrees of its courts; and although it knows that they are liable to be reversed, yet it has a right, so long as they stand, to presume that they had been properly rendered.

The case of *Kittleby* v. *Lamb*, 2 Chan. 404, quoted and recognized by Lord REDESDALE in *Bennett* v. *Hammill*, 2 Scho. and Lef. 566, was that of a bill praying that a certain sum of money in the hands of trustees might be laid out for the benefit of the plaintiff. The bill was dismissed, and afterward the trustees paid the money to the other party who

claimed it. On a bill of review, that decree was reversed; yet the court determined that the trustees who relied on the decree of dismission, signed and enrolled, were protected in the payment they had made, and that the plaintiff must look to the person to whom the trustees paid it, on the ground that the decree, while it remained in force, bound the rights and justified the trustees, though they paid it voluntarily and without suit.

*Lessee of Taylor* v. *Boyd*, 3 Hamm. (Ohio), and *McCormick* v. *McClure*, 6 Blackf. 466, are cases of decrees simply establishing the right to land, and the parties in whose favor the right was established by the decrees, afterward, made private sales of the lands, and subsequently thereto the decrees were reversed. It was held, in both cases, that the reversal did not affect the rights of the purchasers; that they acquired valid titles as established by the decrees under which they purchased.

In *Gelpecke* v. *City of Dubuque*, 1 Wall. 175, the same principle was applied in a case where an act of the legislature of Iowa, authorizing the issue of municipal bonds in certain cases, had at one time been decided by the Supreme Court of that State to be constitutional, and afterward to be unconstitutional; and it was held that bonds issued and put upon the market during the time the first decision holding the act constitutional was in force, must be governed, as to their validity, by such decision, and be held valid, such question of validity coming up after the making of the last decision that the law was unconstitutional.

So, in the case of *Harris* v. *Jex*, 55 N. Y. 421, where two mortgages had been executed prior to the passage of the Legal Tender Act, and intermediate the decision of the Supreme Court of the United States in *Hepburn* v. *Griswold*, 8 Wall. 605, holding that act void as to antecedent contracts, and the reversal of that decision in *Knox* v. *Lee*, 12 Wall. 457, the owner of the equity of redemption tendered to the plaintiff payment of the mortgages in legal tender notes, which was refused. It was held, the question arising subsequently to

the last decision, that the plaintiff, at the time of the tender, had the right to rely upon the first decision, which was then the law as applied to the relation of the parties, and the tender, being insufficient according to the law as then declared, did not discharge the mortgages. See, also, *Menges* v. *Dentler*, 33 Penn. St. 495.

The decree on the bill of review, then, being in full force at the time these rights were acquired from and under Moses, the parties acquiring such rights were entitled to rely upon that decision as the law which determined what was the estate which Charles D. Flagler had in the lands. That decree declared such estate to be a remainder in fee, and we are of opinion that such was the estate which the Engles and Day took by their purchase, and which they now hold indefeasibly.

It is objected that the Engles and Day were parties to the writ of error, in 1866, to reverse the bill of review decree, and interposed a defense; that the court decided adversely to the defense, and that thus they are bound by the judgment of reversal. We fail to see how their rights as purchasers could be in any way affected by such reversal, as they were not parties to the suit in which the partition decree or the bill of review decree was rendered, and no question as to the merits of that partition decree was in any way involved. The reversal by this court was on the sole ground that the partition decree purported to be by consent.

It is further objected that, as Elizabeth Flagler, the child of Charles, and the original complainant in this suit, was under age when the decree in the review proceedings was entered, she was not bound by it, but that she had her day in court, after coming of age, to show cause against the decree. No such day was given by the decree, nor is it in accordance with our practice to give such day, nor that decrees against infants are conditional and interlocutory. The decree was absolute against the infant, and properly so.

In *Barnes* v. *Hazelton*, 50 Ill. 432, this court said: "Under the uniform practice in chancery in this State, a decree against an infant is, in the first instance, absolute, and no day is given

to show cause after he becomes of age. Instead thereof, our statute gives to a minor five years, after attaining full age, to bring his writ of error."

As regards the appellant Wadhams, his title rests upon his warranty deeds from Charles D. Flagler, of February 17, 1853, and January 18, 1854. The decree in partition was at that time in full force, and he, as Moses himself would have done, occupies a different position from that of purchasers from either of them under the decree on the bill of review. But there was one point taken in behalf of Wadhams—that, on filing a bill to execute a decree, the court will deny relief when it is seen the decree is unjust—which we now incline to think was not allowed its due weight in our former decision. It was then dismissed with the observation that the doctrine did not apply to this case, because we did not perceive any injustice in the decree. Further consideration leads us to believe that this was a mistaken view.

The decree in partition did not proceed upon the judgment of the court exercised as to the rights of the parties, but it purported to be solely upon the consent of Charles D. Flagler, contained in his answer to the bill. If he in fact never gave any such consent, nor ever intended to do so, but the contrary, then the decree can not be deemed fair and just. What were the attendant circumstances? Charles D. Flagler lived at Newburgh, New York. Mrs. Garrett and the two Crows, Thomas G. and James, were desirous to have their shares in the property set off to them in severalty. James Crow accordingly wrote to Charles, who, in the fall of 1850, came to Chicago for the purpose of having a division, and the parties came to an agreement what lands should be set off in severalty to each interest, that is to say, to the Mrs. Garrett interest, that being one-half, to the Crow interest, being two-sixths, and to the Flagler interest, that being one-sixth, to represent their respective undivided interests. But the Crows and Mrs. Garrett told Charles the property could not be set off except by a bill in chancery. Three separate statements in writing were drawn up by James Crow, of the

particular lands to go to each share, as was agreed upon, the one, as to Charles' share, and as referred to in the testimony, is in the following words:

"Exhibit B. Property set off to Charles D. Flagler (then follows a description of the property). We deed the above property to Flagler subject to the covenants, conditions and reversions of the will."   *   *   *   *   *   *   *   *

Charles then departed for his home in New York, leaving it with James Crow to have the necessary legal proceedings for the amicable and agreed upon partition taken.

James Crow employed Mr. Goodrich to draw the bill in partition, handing him the three written memoranda of the statements of property going to each, as had been agreed upon, marked "Exhibits A, B and C," as the basis of the proceeding, and which were incorporated as such exhibits in the bill, except the portion of "Exhibit B" following the description of the property, was omitted.

The bill was filed for the March term, 1851. It recites the agreement for the division which had already been made, and purports only to have the before agreed upon division carried out.

When it was necessary for an answer to be filed, Crow says he called upon Mr. Arnold, and requested him to file an answer for Charles; that Mr. Arnold observed, "You want, I suppose, the property to go according to the will," and Crow replied he did. The consent answer of Charles was then filed by Arnold & Lay, as his solicitors, May 9th, 1851. They both testify they had not read the bill for partition before they filed the answer.

An attorney has *no implied authority* to compromise or give up any right of his client, *nor to consent to* a judgment against his client. *Swinfen* v. *Swinfen,* 24 Beav. 549; *People* v. *Lamborn,* 1 Scam. 123.

On the 17th of May, 1851, Charles again came to Chicago. On the 26th of May, 1851, the decree was entered. On the 27th, the court adjourned for the term. On the 29th, a copy of the decree was shown to Charles, on examining which, he

became greatly excited, and declared very emphatically that he would not abide by it, complaining that it was not according to the agreement, which was, that the lands were to be set off to him according to the provisions of the will; then followed a dispute as to the construction of the will, Charles insisting it gave him a fee, and Crow, that it gave him only a life estate, and there had been this difference of construction between Charles and the executors, Mrs. Garrett and the Crows, they appearing desirous to give him as small an interest as possible in case he survived to take, fearing he might squander it; and this, doubtless, is the key to the mistake which occurred: Crow's version of the limitations of the will was, through mistake, wrongly substituted in the stead of *the limitations of the will.*

"Exhibit B" furnishes most satisfactory evidence of what the actual consent and intention of Charles was—that the Flagler share was to be set off "subject to the covenants, conditions and reservations of the will." This, without further entering upon the testimony, we are fully satisfied, from the evidence, was all the agreement or consent of Charles that there was upon the subject.

The deeds and agreement of May 29, 1851, have already been commented on as being no ratification of the decree, or of the action of the attorneys in filing Charles' answer in the particular of limiting his interest to a life estate. They are doubtless a ratification, so far as respects the setting off in severalty of the three undivided Garrett, Crows and Flagler interests, and there has never been any dissatisfaction in that respect, that having been previously agreed upon.

The mutual exchange of deeds completed the partition so far as respected the setting off in severalty of the three several shares above named, but they effected nothing toward the transfer of any interest of Charles, to his children. The deeds of release from Mrs. Garrett and the Crows were to Charles alone, with no mention whatever of his children. The agreement of May 29, 1851, would appear to have been made to pacify the excitement of Charles against the decree, and to

induce him to execute the deeds to Mrs. Garrett and the Crows, and seems to have been carefully prepared with the view to guard the rights of all. It is thereby agreed that the Flagler share shall be subject to such interest of the children as they may be entitled to under the will, making no mention of the decree; but when it comes to the personal covenant of indemnity as to the Crows and Mrs. Garrett shares, it is to save harmless those shares from any claims the children may be entitled to under the will, or the decree of any court.

We are entirely satisfied that this consent decree declares a wrong definition of the rights of Charles, on the mistaken supposition that he was consenting thereto, while, in fact, neither he nor his counsel intended to assent to any such thing; but that he intended to have and retain all his rights under the will, and never consented or intended to give up any portion thereof to his children. Any such consent or intention is an imputed one to him, not an actual one. If this consent decree, and the written instruments of May 29, 1851, are not allowed to have the effect to limit the interest of Charles to a life estate, it is plain that no subsequent statements and declarations of his, in evidence, should be admitted to have such effect.

The decree, so far as it attempts to define the respective rights of Charles and his children, can not rightly be regarded as a construction of the will in that respect. The decree does not profess to construe the will; the bill asks nothing of the kind. It is one merely to have set apart the Mrs. Garrett, the Crow and the Flagler shares into three divisions, as had already been agreed upon by the parties, and asks only to have the court adopt the division that had already been agreed upon between the parties themselves, and what the precise agreement was, as respects the Flagler share, is evidenced in writing by "Exhibit B." There was no occasion to construe the will in this respect. All that was necessary was, to set apart the share of the Flaglers, by itself, to be held by them according to the provisions of the will.

Arriving, as we do now, to the conclusion that, upon the

evidence in this case, as matter of fact, this consent decree does not rest upon any basis of real right and equity, we come to the inquiry whether a court of equity should lend its aid in carrying it into execution, or give relief which would be tantamount to that; the bill for such purpose, in the present case, being on the part of one of the children of Charles, and not on the part of any one having acquired rights under them. A partition of an estate in a court of chancery is not finally completed until mutual conveyances are executed of the allotments made to the several parties. As said by Lord REDESDALE, in *Whaley* v. *Dawson*, 2 Sch. & Lefr. 371, "Partition in equity proceeds upon conveyances to be executed by the parties, and if the parties be not competent to execute the conveyances, the partition can not be effectually had." A court of equity acts *in personam*. *Penn* v. *Lord Baltimore*, 1 Ves. Sen. 447.

In all suits in equity the primary decree is *in personam*, and not *in rem*. Story Eq. Jur. sec. 744; *Chickering* v. *Failes*, 29 Ill. 294.

Before our statute of 1861 permitting it to be done, a mere decree of a court of chancery would not pass the legal title to land. It is said, in answer, that the proceeding in partition, here, was, at law, under the statute; but we can have no doubt that it was a proceeding in chancery. The decree in partition, here, does not provide for conveyances at all, nor for giving possession or other enjoyment, and extends no further than merely to make the partition. The decree is, in this respect, imperfect, and leaves the division incomplete; and, although carried into effect, in the respect of effecting a valid partition of the three interests of Mrs. Garrett, the Crows and the Flaglers, by the subsequent act of the parties in the interchange of mutual deeds of release, it was still left and remained incomplete in the respect of investing the children of Charles with any legal estate in the land beyond that which was given to them by the will. In this latter respect, the decree was incapable of being executed until the necessary authority should be given by the entry of a further order in the cause, or by a new bill to supply

the omission, and for execution of the former decree. That decree might have provided for the conveyance of the legal title by Charles, to be made then or at a future day, when the events requiring it, supposed in the decree, should occur; or for the execution by Charles of a covenant to stand seized to the use of himself for life, remainder in fee to the children; or for a conveyance of the whole title in fee to a trustee upon the same trusts; and then the execution of the decree might have been enforced by the ordinary process of the court. As it is, the decree is but the expression of a purpose that the children should have the fee, without accomplishing the object by its own force, or providing the means for effecting its accomplishment. Hence the present suit, to enforce, by means of an independent decree, a conveyance of the legal estate from the purchasers from Charles, and an account for the rents and profits of the land since the time of his death. It is, in its nature, to obtain execution of the decree in partition, and supply an omission therein which is necessary to the efficacy of the decree, as giving a remainder in fee to the children.

Upon all the facts shown in this case, the court would not originally have made a decree like this one, limiting to Charles a life estate, and declaring a remainder over in fee to his children after him. There is authority for the doctrine, that the court may, on a bill to carry a decree into execution, look into the case to see if it will make the same decree a second time.

In such a case it is said, " it is competent for the court, in respect of the special application, to examine the decree, and if it be unjust, to refuse enforcement." Adams Eq. 416.

Daniell, in 2 Dan. Ch. Pr. 1614, citing *Lawrence* v. *Berney,* 2 Ch. Rep., on this point says: " It is laid down, that although where a decree is capable of being executed by the ordinary process and forms of the court, whatever the iniquity of the decree may be, yet, till it is reversed, the court is bound to assist it with the utmost process the course of the court will bear. But where the common process of the court will not serve, and things come to be in such a state and condition, after a decree made, that it requires an original bill, and a

second decree upon that, before the first decree can be executed—if the first decree is unjust—then this court desires to be excused in making it its own act, and to build upon such foundations, and charging its own conscience with promoting an apparent injustice; and this obliges the court to examine the grounds of the first decree, before it makes the same decree again."

In the case of *O'Connel* v. *McNamara*, 3 Dr. & Warren, 411, Lord Chancellor SUGDEN said: "I do not understand the rule to be, that this court is bound to carry into execution an erroneous decree. On the contrary, I apprehend that when a party comes into this court asking for the benefit of a former decree, he must be prepared to show, if the case requires it, that such decree was right," and to like effect *Hamilton* v. *Houghton*, 2 Bligh P. C. 169; *Bean* v. *Smith*, 2 Mason, 252.

There are, it is admitted, authorities the other way on this subject. Story in his Eq. Pl. § 430, in speaking upon it, says: "And the court has even, on circumstances, refused to enforce the decree, although, in other cases, the court and the House of Lords, upon an appeal, seem to have considered that the law of the decree ought not to be examined on a bill to carry it into execution," and so Mitf. Ch. Pl. 96. And although it is insisted by appellee that the authorities cited are totally inapplicable to such a case as the present, we are willing to accept the principle declared as pertinent to the case of a bill seeking the particular description of relief as in this case.

The estate of Charles, under the will, we take it, was alienable by him at any time after Garrett's, the testator's, death, and would pass as a legal title, to take effect in possession, when it fully accrued and became absolute.

As the decree did not execute itself, and contains no provision for its own execution, the case, in its nature, is one of a declaration of gift by Charles to his children, evidenced by a supposed consent decree, made by the owner of a legal interest capable of immediate transfer, but not conveyed to the donees or in trust for them.

Even if a gift had been intended, such a gift would not be

complete; and where the alleged gift is of a legal estate, capable of legal conveyance, which is not made, the gift is revocable.

In *Antrobus* v. *Smith*, 12 Vesey, 39, Sir William GRANT, Master of the Rolls, said: "There is no case in which a party has been compelled to perfect a gift which, in the mode of making it, he has left imperfect. There is *locus pœnitentiœ* as long as it is incomplete, and Mr. Crawford did repent." In *Badgley* v. *Votrain*, 68 Ill. 25, in speaking upon this subject of a voluntary settlement, it was said: "But if, on the other hand, the transaction is incomplete, and its final completion is asked in equity, the court will not interpose to perfect the settlor's liability, without first inquiring into the origin of the claim and the nature of the consideration given," and see authorities there cited. "And where there is no consideration, the court, upon its general principles, can not complete what it finds imperfect," is there quoted, as an observation made by Sir JOHN WIGRAM, in *McFadden* v. *Jenkyns*, 1 Hare, 458. In 1 Story Eq. Jur. § 433, it is laid down as the doctrine, as declared by the weight of more recent adjudications, "that the court will not execute a voluntary contract, and that the principle of the court to withhold its assistance from a volunteer, applies equally whether he seeks to have the benefit of a contract, a covenant, or a settlement."

And it is said by Fry, in his work on Specific Performance, pp. 70, 71, that "the court will never lend its assistance to enforce the specific execution of contracts which are voluntary, or where no consideration emanates from the party seeking specific performance, even though they may have the legal consideration of a seal; and this principle applies whether the contract insisted on be in the form of an agreement, a covenant, or a settlement," and see *Otis* v. *Beckwith*, 49 Ill. 121.

We do not perceive why the same principle may not properly apply in the case of an executory decree, when, in its nature, a family settlement, as in case of an executory contract. A gift capable of being made by a legal conveyance is as imperfect, when created by an executory decree, as when it is created by an executory contract. When the title is of a legal

interest, capable of a legal transfer, an executory decree providing within itself no means for its execution, such as the making of deeds to pass legal estates in land, or otherwise, would seem to be an imperfect creation of a trust or gift, even if a trust or gift had been in fact intended. In this view there was, after the entry of the consent decree, a *locus pœnitentiæ* for Charles, and he availed himself of it, and revoked, so far as he might, the operative force of the decree, by his warranty deeds of conveyance of the lands to Wadhams and Moses, purporting to convey an estate in fee simple absolute for a valuable consideration paid, and by the bill of review proceeding, wherein he procured a reversal of the consent decree.

An effort is made by appellee to derive a consideration for the consent decree and supposed settlement on Charles' children, from the fact that, by the terms of the will, the lands were not to be divided until at the expiration of the three lives of Mrs. Garrett and the two sisters, and that, by the partition made, Charles reaped a benefit in coming into the enjoyment in possession of the land at an earlier period than that fixed by the will. But if any benefit resulted in this respect, it was not special to Charles, but equally a benefit to his co-tenants, the Crows and Mrs. Garrett, and more so to the latter, as she had the larger interest of one half, and they appear to have been equally desirous for the partition. Whatever of such incidental benefit of earlier enjoyment of the possession might have come from the partition, there can be no just pretense whatever, that, for the consideration of that benefit, Charles parted with, or consented to part with, any part of the estate devised to him, to his children.

It is insisted by appellee, that the court should assist in behalf of this partition decree by consent, because it is *res adjudicata*, and because it created an equitable estate in the children, which the court should aid in making effectually available. It is evident that there never has, in fact, been but one judicial determination as to the relative rights of Charles and his children, and that was by the decree on the bill of review reversing the consent decree, and declaring that Charles,

under the will, took a remainder in fee, and giving to him that estate.

The bill of review alleged error of law only, and when the record in the bill of review proceeding was brought before this court on error, the decree therein was reversed solely on the ground that the decree of partition appeared to be by consent, and that therefore a bill of review would not lie, on the familiar legal ground that there can be no error of law alleged against a judgment appearing to be entered by the consent of parties; and it was expressly said, " but we decide nothing as to the rights of purchasers from Charles D.; that must be left for future adjudication." *Flagler* v. *Crow*, 40 Ill. 418. It was, however, there said, as to the will: " Under the will, Charles D. Flagler was clearly entitled to the fee after the death of Letitia, and this record furnishes no explanation of his self-denial in taking only an estate for life." The decree in the partition suit, declaring the respective interests of the parties and appointing commissioners to set off the same, recites: " And it appearing further, from the answers of said Letitia Flagler, Frederick T. Flagler, and Charles D. Flagler, filed herein, that the facts and charges in said bill set forth are ad mitted, and the necessity of such division admitted, and that they assent to and desire the prayer of said bill of complaint to be granted by this court, it is, therefore, further adjudged," etc., declaring how the one-sixth part should go to Charles and his children—which shows the decree to be the consequence of the supposed consent and not of the judgment of the court.

In *Jenkins* v. *Robinson*, 1 Law Rep. Scotch D. and App. cases, House of Lords, 117, decided in 1867, it appeared an action had been brought wherein a compromise was effected, in pursuance whereof the court pronounced the judgment agreed upon. Subsequently, a new action was brought, bringing before the court the same matter which was embraced in the judgment passed by the court in the former case; and the question was, whether the matter was *res adjudicata*.

Lord Chancellor Chelmsford said: " The *interlocutor* (judgment) in the former action having been the result of a com-

promise between the parties, it can not be considered as a *judicium;* nor can it be admitted as *res adjudicata.*"

Lord ROMILLY said: " In my opinion, *res adjudicata* signifies that the court has, after argument and consideration, come to a decision on a contested matter. Here, the court exercised no judicial function upon the subject. It has merely exercised an administrative function, by recording the *interlocutor* which had been agreed to between the parties."

In *Edgerton* v. *Muse,* 2 Hill So. Car. 51, an application by petition before the decree of sale was executed, to correct an error in the decree in including a wrong piece of property in the property partitioned, O'Neale, J., said: " I think the court must exercise the right of correcting its decrees in *ex-parte* cases and cases by consent, so long as they remain unexecuted; for although they purport to be the act of the court, and, as such, have legal effect, yet, in point of fact, they are the mere act of the parties. Neither the facts nor the law can be said to be judicially ascertained in such a proceeding. The only restriction upon the exercise of this power ought to be the execution of the decree. It is then that the decree ought to be regarded as final, and to be an estoppel between all parties and privies."

These judicial utterances are quoted, not as authority for disturbing anything which has been done, but as illustrative of the nature of judgments by consent as differing from judgments *in invitum,* and the extent to which they may be deemed to partake of the character of the party's own act of agreement.

We do not regard that it militates with the doctrine of the conclusive effect of what is *res adjudicata,* that where there is an incomplete decree, and it is ineffective for want of the provision of any means for its execution, and an application is made to a court of equity to supply the imperfection so as to render the decree effective, that then it is admissible to look at the real nature and character of the decree, as it may appear in the light of surrounding circumstances, for the purpose of determining whether there is such an equitable ground for action as will move a court of equity to interpose. Equity will pen-

etrate beyond the covering of form, and look at the substance of a transaction, and treat it as it really and in essence is, however it may seem.

In outward semblance, this partition decree is a decision of court upon the relative rights of Charles D. Flagler and his children, under the will of Garrett. In essential character, it is but the judicially recorded supposed agreement of Flagler. And upon an appeal to equity, by original bill to lend its assistance for carrying it into execution, because of an omission in the decree in providing any means of its execution, it would seem reasonable that the same rule of the court's action should obtain, as in case of any solemn agreement under seal; and where there are manifest the elements of injustice, mistake, surprise, misapprehension and want of consideration, to remain passive.

We are satisfied that these elements are here present, that the supposed consent decree was made without any actual consent, and contrary to intention.

But it is insisted there was an equitable estate here created in the children of Flagler, and *Chickering* v. *Failes*, 29 Ill. *supra*, is cited, where it is said, that such a partition as there was here, "was in equity a good and sufficient partition, which a court of chancery would recognize and enforce between the parties, although not such a partition as vested in the parties the legal title to the shares assigned to each for the want of mutual releases." And so may it be said in the case of a written obligation to convey land.

And yet, in either case, upon application by bill to a court of chancery to compel a conveyance of the legal title, the court might decline to lend its assistance, if the case should be brought within the established rules of non-interposition by a court of equity. What there is here of an equitable estate is this: a decree, taking away from one a fee, and giving him, instead, a life estate, not by judgment of the court, but upon the supposed consent of the party, and it turns out that no consent was ever given, and that there was a contrary intention.

It is, so far as it has effect, in reality a wrongful divestiture of property. There is no ground in moral right, equity and conscience to call upon a court of equity to interpose and assist in carrying it into execution. The only ground is, that it stands a decree, a technical right; and the true nature of the application is, to enforce a technical estoppel. Of such estoppels, Lord Coke said, " they are odious." The one in question is eminently of the kind alluded to in *Jeter* v. *Hewitt*, 22 How. 364: " The *res adjudicata* renders white that which is black, and straight that which is crooked."

The decree rests on mistake. The jurisdiction of chancery is exercisable in relief against mistakes, not to carry them into effect.

The decree is a misconstruction of the will, in declaring a life estate, when the will gave a fee. And although error of law is not to be alleged against a judgment or decree by consent, so as to reverse it, it does not necessarily follow that when an application is made by a bill in chancery for the aid of equity, in carryng the same into execution, and really to supply an omission therein, the character of the judgment or decree, as whether rightful or not, must be entirely shut out of view in determining whether the court will be moved to act, or remain passive.

The bill asks for a decree, both to compel a conveyance of the legal title and an account for the rents and profits of the land since the death of Charles. But upon the same ground that equity will decline to interfere to compel the making of a conveyance of the legal title, it will not interpose to compel an accounting for the rents and profits. It would be inconsistent to decline to compel a conveyance of the legal title, and yet compel an accounting for the rents and profits; as the latter would be in the main all the substantial relief which would be afforded by a conveyance of the legal title.

We are brought to conclude, that upon all the facts and circumstances, there is shown to be no equitable claim for the interposition of a court of equity.

It is said that the decree in partition, and the deeds and agreement of May 29, 1851, taken together, constitute a compromise of doubtful right, in the nature of a family settlement which was made. This assumption is entirely disproved by the facts. There is not, throughout the whole, the trace of an intention on the part of Charles to give anything to his children; but he was always insisting upon his own, according to the will. Such a thing as the making of any gift to his children, is entirely improbable. He was in no condition for doing so; he was poor, and needed all that he had for himself. The children were in extreme infancy, and thus less likely to be made objects of bounty.

Nor was there any compromise of doubtful right. Between Charles and his children, there was no dispute or contest as to what were the rights of either; and there can be no pretense of an agreement between them. If the executors, the Crows, and Mrs. Garrett, saw fit to make any question of his rights, it was gratuitous—no concern whatever of theirs; and the entire conduct of Charles negatives the idea of his yielding up anything.

Because the purchasers under Charles were chargeable with notice of the decree in partition, that is dwelt upon as placing them at a disadvantage, as showing bad faith, and as subordinating their equity. If they had notice of the decree, they also had knowledge of its character, that it failed to have a provision of any means of its execution; and that if an application by bill should be made to a court of equity to carry it into execution, the court, on well settled rules as to interference by equity, might remain passive in a case such as this.

It follows, then, that the decree of the court below in this case should be reversed also as to Wadhams, as well as in respect to the Engles and Day, which is accordingly done, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

WALKER, C. J.: I am unable to concur in either the reason-

ing or conclusion reached by the majority of the court in this case.

CRAIG, J.: I do not concur with the majority of the court in the decision of this case.

73   439
130   452
130   656

73   439
147   259

73   439
152   111
152   207
73   439
167   275

73   439
185   54
185   83
185   84

73   439
d91a  [s] 52

73   439
203  [5] 630