**Sydney Stein, Appellee, v. Susan Kaun et al., Appellants.**

**. Gen. No. 14,517.**

1. STATUTE OF LIMITATIONS—*when equity will not enforce.* In controversies between the original parties to a transaction or those having no greater rights—that is, where no superior equity of a third person intervenes—courts of equity are not always controlled by the Statute of Limitations, and in such cases courts of equity ignore the Statute of Limitations, if necessary to do so, in order to prevent the perpetration of an unconscionable act.

2. SUBROGATION—*when doctrine applies.* A person who advances money at the instance of those owning the equity of redemption for the purpose of preventing foreclosure of matured trust deeds will be allowed the benefit of the doctrine of subrogation, in order to prevent the loss to him of the money so advanced.

3. CHANCERY—*what governs courts of.* Courts of equity exercise their functions primarily *in personam* and are governed by the principles of equity and justice.

4. DECREES—*defense of unjustness.* Courts of equity so abhor injustice that when a decree creditor comes into a court of equity anew, seeking the assistance of that court for the enforcement of the decree, the defense of unjustness thereof will be entertained

and, if established, the court will refuse its aid for the enforcement of the unjust decree.

Foreclosure. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed June 4, 1909.

**Statement by the Court.** This is a foreclosure suit brought by appellee, Sydney Stein, to foreclose the liens of two trust deeds: one to Edwin G. Foreman, as trustee, dated December 22, 1891, recorded December 28, 1891, and the other to W. Arthur Waide, as trustee, dated December 16, 1897, recorded December 17, 1897. Each trust deed secures the payment of a note for $2,500. Complainant only claims an advance of $2,500, made when the latter trust deed was executed; but he claims liens in his favor by virtue of both the trust deeds. The bill was filed in the Circuit Court, on June 30, 1906, and, on January 5, 1907, the chancellor rendered a decree sustaining complainant's lien and ordering the property involved, viz.: 455 and 457 So. Canal street, Chicago, sold to satisfy the indebtedness. Several parties were made defendants below, such as tenants, the trustees in the two trust deeds and others; but there was no contest, except on behalf of the following jointly interested parties, viz.: Mrs. Susan Kaun and her children, and the children and widow of her deceased son, William Kaun, who died during the pendency of the suit. William's widow is also the executrix of his last will and testament and, as such, she was a contestant. Susan, Anton and Joseph Kaun, Wilhelmine Pfister and Gussie Kaun, the executrix, prayed for and were allowed an appeal, and they are now prosecuting this appeal. Anton, Joseph and Wilhelmine are three of the children of Susan Kaun. By way of explanation it may here be stated that Mrs. Kaun was married twice, first to Franz Kaun, who died long before the happening of any of the events we are concerned with, and later, in 1889, to Nicholaus Weiss. Sometime subsequent to the transactions between her and her husband Weiss,

more particularly involved herein, they were divorced and by the decree she was permitted to resume her former name of Susan Kaun.

It appears that Susan Kaun, then Susan Weiss, being the owner of the property involved, and Nicholaus Weiss, her husband, to evidence an indebtedness of that amount, executed and delivered, on December 22, 1891, their note for $2,500, payable in three years, to Foreman Brothers, bankers, and also the trust deed above referred to conveying the property to Edwin G. Foreman, to secure the payment of that note. There is no contest concerning the validity and superiority of the lien of that trust deed over the claims and rights of all parties, except that appellants contend the lien thereof was outlawed by the statute of limitations, when the foreclosure was begun.

By a warranty deed dated August 10, 1895, acknowledged August 19, 1895, and recorded October 1, 1897, executed upon no consideration whatever, Susan and her husband conveyed the property to her brother Anton Wolf. When the indebtedness to the Foreman Brothers became due, in 1894, it was extended for a period of three years, but, when it again became due, in December, 1897, the Foreman Brothers refused to further extend the loan. In order to take care of that matured loan, Mrs. Kaun and her brother applied to one W. Arthur Waide, and Mrs. Kaun employed him to procure a loan and gave him an order upon Foreman Brothers for the abstract of title. Waide went to complainant and arranged with him to loan $2,500 upon the property. That loan is evidenced by a note for $2,500, dated December 16, 1897, and payable in three years, executed by Mrs. Kaun's brother, Arthur Wolf, who then held the title as stated. To secure the payment of that note Wolf executed and delivered the trust deed to Waide, above referred to, which complainant is foreclosing. After having received the abstract of title brought down to date and having examined the same, complainant notified Waide that he would not accept the title as it was, because there was some imperfection in it—"some family matters of

some kind"—and of this fact Waide informed Mrs. Kaun. But, later, when Mr. Waide took up the matter with the complainant, he consented to make the loan upon the understanding that he would take up and hold the Foreman note and trust deed as additional or collateral security for the money he was advancing. The complainant then gave his check to Foreman Brothers and in return received the note and trust deed held by them. This note, uncancelled, and trust deed, unreleased, complainant has held ever since, as well as the note given him December 16, 1897. Complainant's interest has been paid to him up to some time in December, 1905, but none since. When the note of December 16, 1897, became due, in December, 1900, Mrs. Kaun requested him to extend the loan for a period of five years, which he agreed to do, and she executed interest notes payable half-yearly for the five years.

It further appears that when Susan Kaun married Nicholaus Weiss she, by an ante-nuptial agreement dated August 8, 1889, and recorded September 5, 1889, gave him full charge and control of this property, and the net rents and proceeds therefrom, for and during his natural life, on condition, however, that he would "not allow waste, otherwise the trust vested in him after the death of Susan shall cease." About August 10, 1895, Susan and her husband disagreed and separated. They had lived elsewhere for some time, but two weeks after the separation she returned to the property now involved, where she has since lived. She testified that after the separation Weiss had not supported her nor has she seen him since; that the only money he gave her was $10, five years before she returned to the property involved; that after she moved back she collected rents from the property; that, previously, when the interest was paid to the Foreman Brothers he always went with her, and that she gave him the money with which he paid the interest, from the rents.

On August 10, 1895, she and her husband entered

into a written agreement the object of which, as clearly appears from the context thereof, was to nullify their ante-nuptial agreement of 1889. This post-nuptial agreement was recorded February 11, 1896. Thereby Susan Kaun gave to Weiss $300 and all her interest in a certain property known as 522 So. Lincoln street, Chicago, and he, as stated therein, "does hereby convey, release and quit-claim every and all interest * * * that he * * *. may have acquired or may hereafter acquire in, through, or by or under a certain instrument in writing, called an ante-nuptial agreement, made and dated the eighth day of August, A. D. 1889." This agreement further states that in and by the ante-nuptial agreement it had been provided that Nicholaus Weiss was to have full charge and control of the property now involved and then provides: "but, instead, be it known by this agreement, that in the event of the death of Susan Weiss before the death of the said Nicholaus Weiss, the said Nicholaus Weiss instead of having the full power and control of said property * * * is to have no power or control of said property whatever, but this property is to descend to and become the absolute property of my children who are named as follows: * * * immediately upon the day of my death, the said Nicholaus Weiss hereby relinquishing all claims whatsoever."

This agreement is dated on the same day, August 10, 1895, as the warranty deed Mrs. Kaun and her husband executed and delivered to her brother Anton Wolf, whereby she conveyed the property to him. By a warranty deed dated August 12, 1895, not recorded until October 28, 1899, Anton Wolf reconveyed the property to his sister Susan Kaun.

SAMUEL B. KING and JULE F. BROWER, for appellants.

PHILIP STEIN, for appellee.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

That complainant, a stranger to Mrs. Kaun and her children, advanced $2,500 of his money, which prevented a foreclosure and sale of the property involved when the loan by the Foreman Brothers matured, in December, 1897, is not disputed. Mrs. Kaun, or her agent, induced the complainant to make this advance upon the security of the property. Upon the facts in this case it would be manifestly unjust and unconscionable if appellants were permitted to benefit, by complainant's outlay of his money, without being compelled to recognize the lien of the Waide and the Foreman trust deeds.

By virtue of the existence of the post-nuptial agreement of August 10, 1895, which was of record when complainant's trust deed of December 16, 1897, was executed, Mrs. Kaun and her children now seek to cut off complainant from relief; and they assert that he acquired no lien, by that trust deed, when he advanced his $2,500. As to the Foreman trust deed, which he also holds, they conceive he is barred by the statute of limitations. They advance this statute as an obstacle that should prevent a court of equity from decreeing what, according to the dictates of justice and a good conscience, it would here decree were there no such statute.

In point of fact the evidence justifies no conclusion other than that Mrs. Kaun promptly paid the interest upon the indebtedness to Foreman Brothers until the extension thereof expired in December, 1897. There is no dispute but what the interest thereupon was paid until they parted with it to complainant. It would be unreasonable to suppose, upon the evidence herein, that either Wolf or Weiss paid that interest. The bill of foreclosure was filed within ten years of the time Mrs. Kaun paid that interest.

But, aside from this fact, there are other equitable considerations involved here. As, for instance, Mrs. Kaun was a party to inducing complainant to advance money and his money took up the Foreman note, so that the indebtedness now existing is in truth and equity the same debt as the Foreman note. Upon this

indebtedness Mrs. Kaun has paid interest to some time in December, 1905. In controversies between the original parties to transactions or those having no greater rights, that is, where no superior equities of third persons intervene, courts of equity are not always controlled by the statute of limitations.

Primarily and fundamentally courts of equity exercise their function *in personam.* Massie v. Watts, 6 Cranch, 148, 159; Johnson v. Gibson, 116 Ill. 294; Enos v. Hunter, 4 Gil. 211; Wadhams v. Gay, 73 Ill. 415, 429. The chancellor grants relief *inter partes* in respect of the matter in controversy, except where the proceeding before him is a statutory one, and in doing so he is governed by the principles of equity and justice and by his conscience. The extent to which courts of equity go in refusing to lend aid or assistance to the promotion or perpetration of injustice is seen in the following cases: Wadhams v. Gay, 73 Ill. 415; Lawrence Mfg. Co. v. Janesville Mills, 138 U. S. 552, 561; Compton v. Jesup, 68 Fed. 263, 315; Nat. Fdry. & Pipe Wrks. v. Oconto City W. S. Co., 113 Fed. 793, 803-4; Lawrence v. Berney, 2 Ch. Cases. 128, 21 Eng. Rpr'nt, 636; White v. Parnther, 1 Knapp, 179, 12 Eng. R'pr'nt, 303; Union Bnk. v. Commissioners, 119 N. Car. 214, 34 L. R. A. 487; Elec. S. Co. v. Trust Co., 50 N. J. Eq. 93. In Wadhams v. Gay a court of equity refused to carry out or enforce a former decree challenged for unjustness, without first investigating into the merits of the challenge, and when the former decree was found to be unjust the court refused to enforce it. The opinion in that case quotes with approval a citation from Daniell's Chancery Practice, which is in part as follows (p. 431): "If the first decree is unjust—then this court desires to be excused in making it its own act, and to build upon such foundation, and charging its own conscience with promoting an apparent [obvious] injustice; and this obliges the court to examine the grounds of the first decree, before it makes the same decree again." True, in that case unjustness was not held to be a ground of attack upon

a decree, by the decree defendant, in an original pro-
ceeding, for there must be an end to litigation. But
it was held that, to the tender conscience of a chancel-
lor, unjustness is so abhorrent that it is a valid de-
fense, even against a decree of a court of equity, when
the possessor of the unjust decree opens up litigation
by coming into a court of equity anew and thus seeks
the aid of that court in the promotion or perpetration
of an injustice. With reference to the interposition
of the doctrine of *res adjudicata,* which naturally oc-
curs to the legal mind as an obstacle to the reinvesti-
gation into the justness of the former decree, our Su-
preme court says (p. 437): ''There is no ground in
moral right, equity and conscience to call upon a court
of equity to interpose and assist in carrying it [such
decree] into execution. The only ground is, that it
stands as a decree—a technical right—and the true na-
ture of the application is to enforce a technical estop-
pel. Of such estoppels, Lord Coke said: 'they are
odious.' The one in question is eminently of the kind
alluded to in Jeter v. Hewitt, 22 How. 352: 'The *res
adjudicata* renders white that which is black, and
straight that which is crooked.' '' And our Supreme
Court held it to be proper and competent, in such case,
to examine whether the original decree was unjust and
if unjust to refuse enforcement thereof. The case was
taken to the Supreme Court of the United States and
was there affirmed. Gay v. Parpart, 106 U. S. 679.
The doctrine of the case has since been repeatedly
reiterated in this state. Teall v. Dunnihoo, 230 Ill.
476, 488; Pestel v. Primm, 109 Ill. 353; Jenkins v.
Bank, 111 Ill. 462; Lancaster v. Snow, 184 Ill. 534;
Durham v. Field, 30 Ill. App. 121; Shepard v. Speer,
41 Ill. App. 211, 218; Little v. Chicago, 46 Ill. App.
534; Fitzpatrick v. Rutter, 58 Ill. App. 532, and 60
Ill. App. 657. The doctrine of the above cases that
courts of equity, even upon the basis of a decree, will
not promote obvious injustice is well settled and uni-
versally recognized. But more specifically in point, in
the case at bar, is the case of Thorndike v. Thorndike,

142 Ill. 453. In that case, which was a suit in equity, our Supreme Court enunciated the established doctrine that, when equity and justice so require, courts of equity will, as between the immediate parties to a transaction, disregard the statute. The court in that case said: "The Statute of Limitations is a purely legal, as contradistinguished from an equitable, defense, and although courts of equity will ordinarily act in obedience and in analogy to the Statute of Limitations, yet they will also, in proper cases, interfere in actions at law to prevent the bar of the statute where it would be inequitable and unjust. And so it has been held, that where the obligation is clear, and its essential character has not been affected by the lapse of time, equity will enforce a claim of long standing as readily as one of recent origin, as between the immediate parties to the transaction." In Greenman v. Greenman, 107 Ill. 404, 411, our Supreme Court said: "The Statute of Limitations does not strictly apply to cases in equity, but equity generally follows the law, and denominates the period that the statute requires to bar an action laches that renders a demand stale." That case was followed in De Walsh v. Braman, 160 Ill. 415. In Wilson v. Eq. Trust Co., 98 Ill. App. 81, this question was considered and there it was held that in some cases a court of equity will not permit the bar of the statute of limitations to be interposed against conscience, but will administer a remedy within its jurisdiction and that it will enforce the right, for the prevention of fraud. In the case at bar it would be, substantially, a fraud upon complainant if appellants were permitted to avail themselves of his money and then turn him away without any lien upon the property he was induced to conserve. We doubt if the children of Mrs. Kaun have any standing in court whatever, by virtue of the post-nuptial agreement between Mrs. Kaun and her second husband, Weiss. They certainly have no interest in equity superior to the lien of the Foreman trust deed, which existed previous to that agreement. Furthermore, at

best they would be but volunteers upon no considera-
tion and, therefore, in no better equitable position than
their mother.

We are satisfied that as part of the transaction
whereby complainant advanced $2,500 it was agreed
that he might take up and hold the Foreman trust
deed and note as additional security; but whether that
be so or not is not vitally material. The equitable doc-
trine of subrogation is here entirely sufficient for com-
plainant's purposes. That familiar doctrine, when
applicable, is invoked and interposed by courts of
equity whenever necessary in order that justice be
done between litigating parties. In Tyrrell v. Ward,
102 Ill. 29, it was applied to cut off an intervening lien
of a judgment creditor of the grantor, where the per-
son loaning money had used a part of the money to
take up a prior existing encumbrance, although he had
released the encumbrance. The following cases are
also of interest as instances of the application of the
equitable doctrine of subrogation: Worcester Nat.
Bnk. v. Cheeney, 87 Ill. 602; Young v. Morgan, 89 Ill.
200, and Darst v. Gale, 83 Ill. 136. Whether or not
Mrs. Kaun agreed he should take up and retain the
Foreman indebtedness, complainant, who advanced his
money at her request, is not, in equity, a mere stranger
or interloper in whose favor the doctrine would not
be applied.

Courts of equity have failed in the purpose for
which they were originated and will have degenerated
and become useless institutions should the time come
when they wittingly deny justice and, in the exercise
of their peculiar powers, administer injustice. To let
Mrs. Kaun and the other appellants retain the prop-
erty here involved and require complainant to go
hence without relief would be a most unconscionable
act.

The decree of the chancellor is affirmed and appel-
lee's motion to tax against appellants the costs of the
additional abstract, filed by appellee, is allowed.

*Affirmed.*