JOSEPH F. WHITTINGTON

v.

ROBERT W. ROSS ET AL.

1. RECOGNIZANCES—POWER OF STATE'S ATTORNEY TO COMPROMISE JUDGMENTS ON.—A State's attorney has no power to compromise judgments recovered upon forfeited recognizances, or to receive in settlement thereof anything less than the full face of such judgments.

2. PAYMENTS MADE UPON COMPROMISE.—Where a defendant has made payment according to an agreement of settlement with the State's attorney, and execution is afterwards issued for the full amount of the judgments attempted to be compromised, such payments should be credited to him as partial payment of the judgments.

3. CHANCERY—OBJECTION THAT REMEDY IS AT LAW.—An objection that a complainant has an adequate remedy at law, comes too late in this court. After a defendant in chancery has filed his answer he submits to the jurisdiction of the court, and he cannot object that complainant has a remedy at law.

ERROR to the Circuit Court of Fayette county; the Hon. JESSE J. PHILLIPS, Judge, presiding. Opinion filed April 7, 1881.

Mr. F. M. YOUNGBLOOD, for plaintiff in error; that judgments cease to be a lien upon real estate after the lapse of seven years, cited Stribbling v. Prettyman, 57 Ill. 371.

Mr. W. M. FARMER, and Mr. B. W. HENRY, for defendant in error ; that the remedy of complainant was at law, by motion to quash the execution, cited Sandburg v. Papineau, 81 Ill 446.; Freeman on Executions, § 30.

General statutes of limitation have no force when public

rights are involved : President, etc. v. Brown, 1 Scam. 106 ; Board of Sup'rs v. City of Lincoln, 81 Ill. 156 ; Alton v. Ill. Trans. Co. 12 Ill. 38 ; Angell on Limitations, § 38 ; Dillon on Municipal Corporations, § 532.

The acts of a public officer beyond his authority are not binding upon the public : School Directors v. Fogleman, 76 Ill. 189 ; State v. Allen, 43 Ill. 456 ; David v. Hercules, 57 Ill. 446.

CASEY, J.  This was a bill in chancery, filed by the plaintiff in error against the defendants in error, in the Circuit Court of Fayette county.  The bill alleges, that on the 31st day of March, A. D. 1869, two judgments were obtained in the Circuit Court of Fayette county, on forfeited recognizances, both in favor of The People, and one for the sum of six hundred dollars, against Ellis Spencer, Joshua Payne, Carrol Payne and the plaintiff in error, and the other for four hundred dollars, against Ellis Spencer, Carrol Payne and the plaintiff in error.  That Ellis Spencer, Joshua Payne and Carrol Payne, were at the time said judgments were obtained, and still are insolvent.  That on the 9th day of June, A. D. 1869, executions were issued on said judgments to the sheriff of Franklin county, and were by him returned on the 8th day of September, A. D. 1869, indorsed "no property found."  That on the 16th day of October, A. D. 1869, M. B. Thompson, then State's attorney for the 17th circuit, including the county of Fayette, proposed in writing to the plaintiff in error, that if he would pay $450, and all costs, and State's attorney's fees and commissions, in all aggregating $660, it would be received in satisfaction of both judgments.  That the proposition was accepted by the plaintiff in error, and by him fully complied with, in the time required in said proposition.  That the said States attorney and clerk failed to enter said judgments, satisfied on the record.  And that on the 13th day of November, A. D. 1877, defendant Ross, as clerk of the Circuit Court of Fayette county, issued executions on said judgments for the entire amount thereof and costs, to the sheriff of Franklin county.  That no executions were issued on the said

judgments from the 9th day of June, A. D. 1869, to the 13th day of November, A. D. 1877. That the said last named executions were issued without authority of law, more than seven years having elapsed since the former executions were issued. That the executions are now in the hands of defendant Akin, as sheriff of Franklin county, and he is about to proceed to make a levy, etc. Prayer of bill that a preliminary injunction may issue, etc; waiving defendant's answer under oath, and that upon a final hearing the court will decree that the clerk enter said judgments satisfied. There is a general prayer for relief.

The bill is sworn to, and with it are filed the written propositions, copies of the judgments, executions, etc., and receipts, showing compliance with the written proposition. On the 3d day of October, A. D. 1878, the defendants filed their amended answer to the bill, denying that they had any knowledge of the compromise with Thompson; that they supposed that the money was paid, as alleged. Admits the issuing of the executions; deny that Thompson as State's attorney had any legal right to make such compromise; and denies that the plaintiffs in said judgments are thereby precluded from collecting the same, etc. The following is an agreed statement of the facts:

"It is hereby agreed by the parties hereto, by their respective counsel, that this cause is to be submitted to the court on the bill as sworn to, with exhibits as in said bill set forth, and the amended answer of the defendants; also, it is agreed between the parties hereto by their respective counsel, that it was the understanding and agreement between the complainant and the said M. B. Thompson, at the time of the execution of the written proposition set out in the bill as exhibit 'C,'" that if complainant complied with the terms of said written proposition, and made the payments therein specified within the time therein mentioned, said judgments were to be entered satisfied by the said State's attorney. It is also agreed by the parties hereto by their respective counsel, that the payment made to Mr. Hankins, the then clerk of the Circuit Court of Fayette county, as set out in said bill, were made by the directions of the said M. B. Thompson, the then State's

attorney of the 17th judicial circuit, of which the county of Fayette formed a part. It is also agreed that all of the payments set forth in complainant's bill were made within sixty days from the date of the paper marked "C." It is further agreed by the parties hereto, that no executions ever issued on either of said judgments from the 7th day of June, A. D. 1869, until the 13th day of November, A. D. 1877, nearly nine years after the same became liens. Now, it is stipulated between the parties hereto, that this case is to be submitted on this bill, answer, exhibits, and this agreement of facts, as though a formal replication to defendant's answer had been filed, and decree shall be entered as to the right of the parties hereto, as the court shall determine the law to be, arising out of this particular state of facts, with the right to either party to prosecute an appeal or writ of error, as provided by law and the rule of Chancery Practice.

"Dated this October 3d, 1878.

"F. M. YOUNGBLOOD,
Sol'r for Complainant."

"Reference is made to all of the exhibits in said bill, and the exhibits and allegation as to times and dates are agreed to as correct.

"J. P. VANDORSTEN,
Defendant's Counsel."

The cause was heard at the February term of the Fayette Circuit Court, A. D. 1880, and the injunction was dissolved and the bill dismissed.

The case is brought here on error. It is insisted by counsel for defendants in error, that the plaintiff can have no standing in a court of equity, because he has a full and complete remedy at law in the nature of an action *audita querela*, or as the more modern practice is, by a motion to quash the execution.

This motion comes too late in this court. Without saying what might have been the result of such a motion had it been made in the circuit court in apt time, we think that it cannot be insisted on for the first time in this court. In the case of Stout et al. v. Cook, reported in 41 Ill. 447, it is said that if

a defendant in chancery answers and submits to the jurisdiction of the court, it is too late for him to object that the complainant had an adequate remedy at law. So in Magee v. Magee, 51 Ill. 503, the court say: The objection should have been interposed, before the answer was filed, and comes too late on error. Although the remedy may have been complete at law, the question was not raised in apt time.

In Dodge et al. v. Wright et al. 48 Ill. 383, the Supreme Court say: "We have several times held that except in these cases, where the subject-matter is wholly foreign to the jurisdiction of a court of chancery, and incapable of being proper ly brought before it, even by consent, the objection that there is an adequate remedy at law must be insisted upon in the circuit court; and if not, it will be considered as waived when brought here. The subject-matter of the bill in this case is not wholly foreign to the jurisdiction of a court of chancery; and the objection that there is a complete and adequate remedy at law, must be raised in the circuit court. If it is not, it will be considered as waived in this court. Hickey v. Forristal et al. 49 Ill. 256 ; Comstock et al. v. Hennebery, 66 Ill. 212.

We consider these authorities decisive of this point. It is insisted by counsel for plaintiff in error, that Thompson, the State's attorney, had the power to compromise with the plaintifi in error, and that in fact and in law the judgments have been paid ; and in support of this view we are referred to the People v. Christerson et al. 59 Ill. 157.

This case does not seem to support the position taken by plaintiff in error. In the case referred to, the State's attorney directed that the money collected on the judgment, not a part of it, but the whole of it, should be paid to a certain person, and it was done. The Supreme Court say no reason is perceived why the State's attorney could not order or agree that the party should pay the money to any solvent bank or any responsible person for his use. They do say that the State's attorney can compromise and take less than the whole amount due The People. In view of the importance of this question, as well what has been, and still is the well known practice, we have given the subject a very careful consideration.

Whittington v. Ross et al.

The rights, duties, authorities and liabilities of attorneys-at-law (not officers) on questions that have frequently been before the Supreme Court of this State, where an attorney is employed to sue for, and collect a debt without express or specific authority, he can lawfully do no more than obtain a judgment, order an execution, and receive and receipt for the money. He cannot take less than the amount due in satisfaction of the debt, or receive any anything but money. He has no implied authority. Noleen v. Jackson, 16 Ill. 273; Brucket v. Norton, 4th Conn. 517; Lockhart v. Wyatt, 10 Ala. 231; Gosham v. Gale, 7 Cowen, 739; Jackson v. Bartlett, 8 John. 362. An attorney has no implied authority to compromise or give up any right of his client. Swinfer v. Swinfer, 24 Bear. 549; People v. Lamborn, 1st. Scam. 123; Wadhams et al. v. Gray, 73 Ill. 415.

Many other authorities of like import might be referred to. It is very clearly, and beyond any question, the law, that in ordinary practice, an attorney has no implied authority to compromise a claim placed in his hands for collection, and receive less than the amount due.

Now, if this is so ordinarily, does a different rule prevail when the attorney is acting in an official capacity as State's attorney. And assuming that ordinarily an attorney has no implied authority to compromise a claim whereby he receives less than the amount due *a fortiori* is it not so with the State's attorney? The statute in force when this transaction took place, required the State's attorney to "commence and prosecute all actions, suits, process, endictments and prosecutions, civil and criminal, in which the people of the state or any county within such judicial circuit may be concerned * * * * to prosecute all forfeited recognizances and all suits and actions for the recovery of debts, moneys, revenues, fines, penalties and forfeitures, accruing to the people of the State, or any county within the judicial circuit aforesaid."

In the case of the Commission of Public Accounts v. Ross, reported in 1 Dessaus. 468, a bond was placed in the hands of the Attorney-General for collection. He, acting for the State, brought suit on the bond, and afterwards compromised

with the agent of the debtor, receiving in payment of the bond, merchandise, which he converted to his own use, and gave up the bond, and a mortgage given to secure it. It was held that the action of the Attorney-General was illegal. That he had no power to release the debtor without the payment to him in money of the amount due on said bond. The original debtor was decreed to pay the debt again.

In the case of Burnett v. The State, reported in 1 Yerger, 475, it appears that after the final disposition of the case it was ascertained that the Attorney-General had made some arrangements with the defendant for the payment of the fines and the costs, and the plaintiff in error moved to be discharged without paying or giving security in court for the payment of the fines and costs. The court said, Judge Caton delivering the opinion of the court: The officers of the court must learn where duty with them commences and ends. The court will see to the execution of its judgments, and treat arrangements interfering with them as nullities or contempts, according to the circumstances.

The arrangements of the Attorney-General for the government will be wholly disregarded as far as respects the judgments, his own costs excepted. Other officers present may control their costs.

In Merwin v. Huntington, 2nd Conn. 212, the court say: "Whether a public prosecutor has a right to discontinue the prosecution on the payment of costs is a point that has not been decided."

It would seem that cases might occur where this would be reasonable; at the same time it will be agreed that as such power might be perverted and become the instrument of oppression, courts should be very cautious about giving it their sanction. The abuses which might be practiced under cover of the supposed right of omitting to prosecute on the reception of money for the national treasury, might be erroneous and strike at the foundation of criminal justice. They are too obvious to require enumeration. It is the duty of the State's attorney to collect forfeited recognizances.

If he fails to do so because of the insolvency of the parties,

Whittington v. Ross.

he is not to blame. The officer taking the recognizance should be held to a strict account. To say that the State's attorney can compromise in one case, is virtually saying he may compromise in all cases. It would be giving him a power, the consequence of which no one could foresee. This case is not a bad illustration of how that power might be abused. The judgments were for the aggregate sum of $1,100.

The compromise was that the plaintiff in error was to pay $450 and the costs, and to pay the whole cost of the State's attorney as if he had collected $1,100. If he could have compromised for $450.00, he could as well compromise for $10, and yet required his costs to be paid as if he had collected the entire judgments.

We are well satisfied that State's attorneys have no such power, and that their acts of that character may be treated as a nullity. The 5th error assigned is that the court erred in its final order in not allowing complainant credit for all amounts paid on such judgments. We think this error well assigned. There is a general prayer for relief in the bill under which the credits might have been allowed.

It is admitted that the credits are just. That plaintiff in error paid the attorney. It is insisted by the defendant that the plaintiff should have tendered the remainder due, and that not having done so, he is not entitled to the credits.

In some cases that may be a correct proposition. In this case it was the duty of the officers to enter the credits. They failed to do so. All the parties are now before the court, and it is admitted that appellant is entitled to a credit to the extent of the payments.

We see no good reason why the parties should be driven to another proceeding for the purpose of obtaining credits now admitted to be just and proper. The decree of the circuit court should have allowed the credit of four hundred and fifty dollars and costs, paid by appellant.

It fails to do so, and for this reason the judgment of the circuit court is reversed and cause remanded.

Reversed and remanded.