Thomas S. Ridgway and Harriet Peeples, Executor and Executrix of John McKee Peeples, deceased, and Thomas S. Ridgway, Robert Reid and David Reid, v. John F. McCartney, Trustee, et al.

1. GIFTS—*Uncompleted in Equity.*—A gift can only be effectual after the intention to make it has been followed by actual delivery of possession or some equivalent act. A court of equity will not lend its aid to enforce an uncompleted gift.

2. GIFTS INTER VIVOS—*What Constitutes Volunteers.*—To constitute a gift *inter vivos* the rule is universal that everything necessary to complete a transfer of the title of the donor must have been made. Volunteers have, as against a mere donor, no equity.

3. POSSESSION—*Must Accompany a Gift.*—A true and proper gift is always accompanied with delivery of possession and takes effect immediately.

4. TRUSTS—*Enforced for the Benefit of Volunteers.*—A court of equity will, at the suit of a volunteer, enforce a trust created for his benefit, but it will not complete an imperfect gift or compel specific performance of a promise made without consideration.

5. SAME—*Declaration of.*—When the owner and holder of the legal title to property by a formal declaration of trust which purports to be and is a complete transaction, assumes the character of trustees of such property for the benefit of those to whom he gives it and whom he thus makes *cestuis que trust* of the same, a court of equity will enforce the trust.

6. SAME—*Creation of.*—The legal title being in the donor, he has, to complete his gift, only to declare that he holds the property in trust for another to whom he gives the use, and to create a perfected trust; but if the donor merely declares that he gives, sets apart and settles without making a delivery of possession or transfer of title, no trust is created.

7. SAME—*What is Necessary to Perfect a Trust.*—In order to perfect a

trust it is necessary that the person creating surrender possession or, in an appropriate manner, transfer the legal title to some one who is to hold it for the donee. A mere intention to give or transfer does not amount to a transfer, neither does it create a trust.

**Memorandum.**—In equity. Appeal from a decree rendered by the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1894. Reversed and bill dismissed as to appellants. Opinion filed February 12, 1895.

## STATEMENT OF THE CASE.

This appeal is from a decree made April 7, 1894, wherein appellants, with John M. Peeples, Jr., and Henry O. Docker, as sureties on bond of one George H. Potter, trustee, were adjudged to pay to appellee, as trustee succeeding said Potter, who died insolvent, $19,795.24, with costs.

On June 30, 1871, Orval Pool, of Shawneetown, Galatin County, Illinois, died, leaving his widow, Madeline Pool, his son, Marshall M. Pool, and his three daughters, Augusta M. Pool Townshend, wife of Richard W. Townshend, Mary Pool Docker, wife of said Henry O. Docker, and Ellen Pool Peeples, wife of said John M. Peeples, Jr. Said one son and three daughters were the only children of said deceased.

At the death of said Orval Pool, June 30, 1871, the daughter, Mrs. Docker, had four children, William A., Guy, Henry O., Jr., and Daisy; another, George P., was born November 19, 1874. At the death of said ancestor, the daughter, Mrs. Peeples, had one child, Clarence M., then one month old; another, Cornelia, was born November 11, 1875.

The estate of Orval Pool was worth at his death, as stated in the bill, about $400,000. Certain lands aggregating in value $9,041.33, were devised by said decedent to Mrs. Peeples and Mrs. Docker for life, remainder to their children. Other than this the entire estate was given by his will, which was duly proven, to M. M. Pool and Mrs. Townshend.

Mrs. Peeples and Mrs. Docker, saying the will was void, demanded from the two latter enough of the estate to equalize the shares of the four. M. M. Pool and Mrs. Townshend, while insisting that the will was valid, proposed a

settlement, and the following agreement was, November 2, 1871, entered into:

"It is agreed between the parties hereto that the estate of Orval Pool, deceased, shall be divided upon the following basis, to wit:

1. Equal division as near as may be of the entire estate, real and personal, of which Orval Pool died seized and possessed, between the four children of said Orval Pool, to-wit: Marshall M. Pool, Augusta M. Pool Townshend, Mary Pool Docker and Ellen Pool Peeples. The shares of the said Mary and Ellen shall be limited to them during their lifetime, and at their decease to descend to their children or descendants of children; and in the case of the death of said Mary or Ellen, or both, so dying without children or descendants of children, then the shares of said Mary and Ellen, or both, so dying without children or descendants of children, shall go in equal shares to the children of said Orval Pool, deceased, and their heirs. The lands and personalty heretofore devised to the said Mary and Ellen by the will of Orval Pool, deceased, are to be taken into consideration in equalizing the division of said estate and the same to be deducted from the shares of said Mary and Ellen.

2. The interest of the said Mary Pool Docker and Ellen Pool Peeples in the moneys, personal property and proceeds of real estate that may be converted into money, as hereinafter provided, shall, within a reasonable time, by a proper and suitable conveyance or conveyances, be conveyed and transferred to some suitable and responsible trustee, whose duty it shall be to keep the principal invested in United States interest-bearing bonds, or in some other profitable manner, and pay semi-annually the accumulations and interest thereon to the said Mary Pool Docker and Ellen Pool Peeples, or their order, respectively, during their natural lives; the principal to be kept intact and paid to their children or descendants of children, as hereinbefore provided, subject to the revision aforesaid. A trustee shall be chosen by the parties to this agreement, whose duty it shall be to

carry out and execute the trust hereby created, and shall enter into a good and sufficient bond, to be approved by the judge of the Circuit Court of Gallatin County for the faithful performance of his duty as such trustee. Said bond shall be made payable to the parties to this agreement for the use of all parties interested in the provisions of this agreement; and if the parties hereto can not agree upon the person who shall act as such trustee, then the said judge of said Gallatin Circuit Court shall appoint said trustee, and the said appointment and the approval of said bond may be made by him either in vacation or term time, as may be most convenient.

3. Marshall M. Pool and Augusta M. Pool Townshend shall retain thirteen hundred and ten (1310) shares of the stock of the Gallatin National Bank, and four hundred (400) shares of the said stock shall be conveyed to the trustee aforesaid for the use of the said Mary Pool Docker and Ellen Pool Peeples subject to the limitations and conditions aforesaid; the interest of the said Mary Pool Docker and Ellen Pool Peeples in said bank stock to be equalized with the interest of the said Marshall M. Pool and Augusta M. Pool Townshend in said stock as hereinafter provided.

4. The trustee herein provided shall have power, and it is made his duty, to sell and convert into money, as soon as the same can be conveniently done without sacrifice, so much of said lands and real estate, except the homestead with the lands adjoining in Shawneetown, as may be necessary to equalize the interest of the said Mary Pool Docker and Ellen Pool Peeples, with the interest of the said Marshall M. Pool and Augusta M. Pool Townshend in the shares of said bank stock; which said sum of money so to be first raised shall be invested, and the interest thereon paid over, in the manner and upon the conditions and subject to the limitations as hereinbefore provided; and provided further, if the proceeds of the sale of said lands shall not be sufficient to equalize the interest aforesaid in said bank stock, then the said Marshall M. Pool and Augusta M. Pool Townshend are to pay the deficit in money to the said trus-

tee for the use of the said Mary Pool Docker and Ellen Pool Peeples, to be invested by him under the conditions and limitations aforesaid; and provided further, that until said real estate shall be converted by said trustee for the purpose above mentioned, it shall be the duty of said Marshall M. Pool and Augusta M. Pool Townshend to account for and pay over to said trustee one-half of the net rents and profits of the above mentioned real estate, for the use of Mary Pool Docker and Ellen Pool Peeples; and provided further, that the said Marshall M. Pool and his wife, and the said Augusta M. Pool Townshend and her husband, shall, on the request of the said trustee, or any purchaser from him, join with the said trustee in all necessary deeds and conveyances, for the purpose of fully and completely assuring the title to the lands to be sold by him as aforesaid; and provided further, that after the interest of the said Mary Pool Docker and Ellen Pool Peeples in the bank stock shall be made equal, as above provided, the residue of said lands shall be held by the said Marshall M. Pool and Augusta M. Pool Townshend, subject to the following trusts, to wit: to pay to the said Mary Pool Docker and Ellen Pool Peeples, respectively, one-fourth of the net rents, issues and profits thereof, until the same shall be conveyed by them to the trustee as herein next provided; secondly, to convey one undivided half thereof, whenever requested by the said Mary Pool Docker and Ellen Pool Peeples, to the trustee hereinbefore provided for, who shall hold the same for their use during their lives as aforesaid; provided, that whenever said lands, or any portion of them, shall become unprofitable, or the value thereof can be more profitably invested, it shall become the duty of said trustee, upon the request of the said Mary Pool Docker and Ellen Pool Peeples, to convert the same into money and invest the proceeds as hereinbefore provided; and provided further, the words "residue of said lands," as last above used, shall be held and understood to include the said home farm, or homestead, together with the farm and lands adjoining the same, as well also as the lots and real estate in said city of Shawneetown, ex-

cepted in the first part of this paragraph. It is further understood and provided, that said trustee, for the purpose of equalizing the interest of the parties in the shares of the bank stock as hereinbefore provided, may sell and dispose of the lands and real estate subject to sale and disposition for that purpose, either at public or private sale, either for cash in hand or upon credit, as he may deem best; * * * and provided further, that said trustee shall make no private sale under the authority above granted, until he shall have first obtained the written consent of said Marshall M. Pool, Augusta M. Pool Townshend, Mary Pool Docker and Ellen Pool Peeples; and it shall be the duty of said trustee in all cases of public sale to furnish, within a reasonable time before said sale to each of the parties hereto, a copy of the notice thereof; provided, the failure to furnish a copy of such notice shall not vitiate the title of any purchaser at such sale.

6. A committee of three persons is hereby constituted, whose duty it shall be to fix and determine the cash value of the lands and real estate bequeathed to the said Mary Pool Docker and Ellen Pool Peeples, by the said Orval Pool, deceased; and the amount, when so ascertained, shall be charged to them, respectively, by way of equalizing their interest with that of the said Marshall M. Pool and Augusta M. Pool Townshend, in the shares in the bank stock aforesaid.

7. And the undersigned, Madeline Pool, widow of the said Orval Pool, deceased, in consideration of the premises, covenants and agreements by the other parties to this agreement, and the conditions, provisos and provisions herein contained, hereby waives, releases and absolutely renounces all right, title and interest that she may in anywise have in the real or personal estate of Orval Pool, her late husband, as his widow, devisee or otherwise, and hereby accepts in lieu thereof the provisions made for her in this agreement. * * *

12. And Richard W. Townshend, husband of Augusta M. Pool Townshend, and Henry O. Docker, husband of Mary

Pool Docker, and John M. Peeples, Jr., husband of Ellen Pool Peeples, each covenants with the parties hereto for the true and faithful performance of all the stipulations contained in this agreement of their respective wives.

Witness our hands and seals this 2d day of November, 1871.

| | |
|---|---|
| MARSHALL M. POOL, | [SEAL.] |
| AUGUSTA M. POOL TOWNSHEND, | [SEAL.] |
| RICHARD W. TOWNSHEND, | [SEAL.] |
| MADELINE POOL, | [SEAL.] |
| ELLEN POOL PEEPLES, | [SEAL.] |
| J. M. PEEPLES, JR., | [SEAL.] |
| HENRY O. DOCKER, | [SEAL.] |
| MARY P. DOCKER. | [SEAL.]" |

Under this agreement George H. Potter was selected to act as trustee, and he, with appellants and others, gave the following bond :

"We, George H. Porter, principal, and Robert Reid, J. McKee Peeples, Ellen P. Peeples, H. O. Docker, Mary P. Docker, J. McKee Peeples, Jr., and Thomas S. Ridgway, sureties, are bound unto Mary Pool Docker, Henry O. Docker, Marshall M. Pool, Richard W. Townshend, Augusta M. Pool Townshend, John M. Peeples and Ellen Pool Peeples, for the use of all persons who may now or hereafter have any rights or interests arising under or growing out of a certain instrument in writing, hereafter mentioned, in the penal sum of $400,000, payment of which well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly, severally and firmly by these presents.

Dated this 26th day of December, A. D. 1871.

The condition of the above obligation is such that, whereas, the above named Mary Pool Docker, Henry O. Docker, Marshall M. Pool, Richard W. Townshend, Augusta M. Pool Townshend, John M. Peeples and Ellen Pool Peeples, did, on the 2d day of November, 1871, execute and deliver, in duplicate, under their respective hands and seals, a certain instrument in writing, providing for a division of the estate, both real and personal, of Orval Pool, deceased, and the

appointment of a trustee to execute and carry into effect certain duties and trusts therein created and defined, and whereas the above named George H. Potter has been appointed a trustee under the provisions of said instrument in writing:

Now, if the said George H. Potter shall faithfully and efficiently discharge said trust, and in good faith do and perform all such duties as are or hereafter may be imposed upon him, or otherwise arise under said instrument in writing and growing out of the trusts therein created, shall also well and truly account for and pay over to the party or parties entitled, all moneys and property as such trustee, at such time and in such manner as is provided for in such instrument, and finally, when the objects of said trust shall have been accomplished, make all such conveyances and transfers of the trust property, and account for and pay over all moneys and effects that may be in his possession or under his control, or for which he is in any manner liable as such trustee, to those ultimately under said instrument, then this obligation to be void, otherwise to remain in full force and virtue.

| | |
|---|---|
| GEO. H. POTTER, | [SEAL.] |
| ROBERT REID, | [SEAL.] |
| DAVID REID, | [SEAL.] |
| J. McKEE PEEPLES, JR., | [SEAL.] |
| ELLEN P. PEEPLES, | [SEAL.] |
| H. O. DOCKER, | [SEAL.] |
| MARY P. DOCKER, | [SEAL.] |
| J. McKEE PEEPLES, | [SEAL.] |
| THOMAS S. RIDGWAY, | [SEAL.]" |

On May 15, 1872, another bond, similar in form, was made by George H. Potter, as principal, and Robert Reid, David Reid, John M. Peeples, Jr., Henry O. Docker, J. McKee Peeples, and Thomas S. Ridgway.

This bond ran to Mary Pool Docker, Henry O. Docker, Marshall M. Pool, Richard W. Townshend, Augusta M. Pool Townshend, John M. Peeples, Jr., Ellen Pool Peeples and Madeline Pool.

On November 19, 1872, the following agreement was entered into:

" This memorandum of an agreement, made and entered into by and between the parties hereto, this 19th day of November, 1872, witnesseth, and provides as follows:

1.  This agreement is made for the express purpose of carrying into effect and supplementary to a certain other agreement and indenture, bearing date the second day of November, 1871, and duly signed by Madeline Pool, Mary P. Docker, Henry O. Docker, Augusta M. P. Townshend, Richard W. Townshend, Ellen P. Peeples, John M. Peeples Jr., and Marshall M. Pool, and is not intended and is not to be construed as conflicting with said last mentioned agreement.

2.  Inasmuch as some of the parties hereto are of the opinion that a postponement of the sale of the lands belonging to the estate of Orval Pool, deceased, by the trustee at public auction, as provided for under said last mentioned agreement, would subserve the best interest of all persons having any right to, or in said lands or the proceeds thereof, it is therefore agreed and hereby expressly provided that there shall be no such public sale of any of said lands for a period of one year from this date, without the written consent of all the parties hereto.

3.  The trustee provided for in the agreement and indenture hereinbefore referred to may sell at private sale any and all the lands and town lots belonging to said estate except the homestead and farm adjoining thereto, at the best prices that can be obtained for the same, with the written consent of the parties hereto, and not otherwise.

5.  That the said trustee is to perform only such services in procuring and completing said sales as the parties hereto may deem necessary.

7.  It is also agreed and hereby provided that the said Marshall M. Pool, Augusta M. P. Townshend and her husband, Richard W. Townshend, shall respectively pay to said trustee for the use of those entitled under said agreement, interest at the rate of six per cent per annum on whatever

excess of their shares of the personal estate at the time so receiving them, they may have respectively received, exclusive of said bank stock, from the date they so received this sum.  *  *  *

9. The taxes of 1871 are to be paid by the executors, and all thereafter, until the difference in the bank stock is equalized, are to be paid out of the proceeds of the sale of lands by the trustee.

10. The value of each share of $100 of said bank stock is hereby fixed at $111, being the estimated value of said stock on the 2d day of November, 1871; and until the shares of said bank stock are equalized as provided for in said original agreement, the parties hereto who have received an excess of said bank stock after deducting the value of the lands willed respectively to Mary Pool Docker and Ellen Pool Peeples as provided for under said original agreement so to be equalized, shall respectively pay semi-annually to said trustee for the use of those entitled thereto under said original agreement, interest thereon at the rate of six per cent per annum, the interest to be computed from the 2d day of November, 1871, and to be paid as above provided until said bank stock is equalized as aforesaid.

11. That inasmuch as it is apprehended by some of the parties hereto, that some of the lands inventoried by the executors of said estate and valued by the appraisers under said original agreement as land having been willed respectively to Mary Pool Docker and Ellen Pool Peeples, did not belong to said Orval Pool at the time of his death, and hence no title passed by his will to some of his lands to said devisees, and whereas the entire value of all of said lands supposed to have passed by said will to the said Mary Pool Docker and Ellen Pool Peeples, including those believed to be good, is for the present to be deducted from the excess of the estimated value of the bank stock, it is therefore expressly provided that the said Marshall M. Pool, Augusta M. Pool Townshend and Richard W. Townshend, shall refund and pay to the said trustee for the use of those entitled under said original agreement, the estimated value of

all such lands as have been taken by them respectively, to which the said Orval Pool did not, at the time of his death, have a good title, or which have not now become good since his death, or which can not be made good by resorting to a court of equity, together with interest thereon at the rate of six per cent per annum, to be computed with half yearly rests from the 2d day of November, 1871; and it is hereby further provided that all costs and expenses incurred in perfecting, or attempting to perfect, the title to any of said lands under the provisions of this article, are to be equally borne by the children of said Orval Pool, deceased, or paid out of funds belonging to said estate.    *    *    *

And it is hereby expressly understood and agreed that if from any cause without the fault of said trustee or the said Mary Pool Docker or Ellen Pool Peeples, their respective agents and attorneys, said executors should refuse, neglect or be unable to make a final settlement as herein contemplated, then the said Marshall M. Pool, August M. P. Townshend and the said Richard W. Townshend, on behalf of his said wife, hereby covenant and agree to pay to said trustee, under said original agreement, whatever they have received of said moneys and personal estate, as shown by the report of the said executors, approved at the September term, 1872, of the County Court, in excess of their respective shares by them as shown by said last mentioned report, exclusive of said bank stock, together with interest thereon, as hereinbefore provided, and the same, when so paid over to said trustee, to be held by him for the use of those entitled under said original agreement, provided, that if there shall be a final settlement, as contemplated, at said November term of said County Court, by said executors, and there is a complete division of said personal estate, as hereinbefore provided, then, and in that case, the said trustee is to receive as part payment of said moneys and personal estate coming to him as trustee, such good notes with accrued interest thereon as may be in the hands of said executors and belonging to said estate.    *    *    *

And whereas, the parties hereto are desirous that the

same shall be liquidated at as early a day as practicable, it is therefore hereby provided and made the duty of said trustee, at the date of each sale of lands by him, under the provisions of this agreement and the original agreement to which this is a supplement, to credit the above mentioned indebtedness by one-half of the proceeds of such sale and retain the other half of said proceeds, as such trustee, for the use of those entitled thereto, under the provisions of said original agreement. The provisions of this article, however, are not to be construed as extending to so much of said proceeds of sales as may be required to be paid out for other purposes specified in this agreement, or to so much of said proceeds as are required to defray such expenses as are necessarily incurred in the execution of this trust.

15. And the said trustee hereby agrees, and it is made his duty, to carry into effect and consummate any and every proposed sale and transfer of land or lots, under the provisions of this agreement, whenever the parties hereto shall, in writing, request him to do so."

OLIVER & SHOWALTER, attorneys for appellants.

FRANK A. JOHNSON, attorney for appellees; JOHN H. MULKEY, of counsel.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

It is contended by counsel for appellee that the contract of 1872, because of the recital therein, that " this agreement is made for the express purpose of carrying into effect, and supplementary to, a certain other agreement and indenture, bearing date the 2d day of November, 1871," etc., " and is not intended and is not to be construed as conflicting with said last mentioned agreement," did not change in any wise the rights of the parties to the respective contracts.

The question in this regard presented to this court is not whether the agreement of 1872 diminished in any man-

ner the amount of property passing to the life tenants and remaindermen.

This is not a proceeding to enforce either the agreement made November 2, 1871, or that entered into November 19, 1872.

The present suit is to enforce, through the medium of a court of equity, the obligations, not only of the principal, but of the sureties to certain bonds given by the trustee, selected to act under the agreement made November 2, 1871.

The contest is as to the obligations of the sureties.

When these bonds were made and the obligations of these sureties became fixed, the agreement of 1872 had not been made; consequently with reference to it the sureties made no contract—entered into no undertaking of indemnity.

If, therefore, the agreement of 1872 be valid, and if it in any way, without the consent of the sureties, modified the liability of the principal to such bonds, the sureties are absolutely discharged. Adams' Equity, 106.

We are not called upon to say whether, as between the parties to the two agreements or as respects the beneficiaries under either, one is variant from the other; the question is, were the duties, obligations or trusts of the trustee selected in pursuance of the contract of 1871, modified by the compact of 1872? That, providing the last agreement was valid, they were, the court below so found. Such finding is, in our opinion, manifestly sustained by an examination of the two instruments.

We thus arrive at the principal question in dispute, viz.: Did the agreement of 1872 have such validity that it modified the duties, obligations or trusts of the trustee under the agreement of 1871?

The parties to this agreement were the widow, one son and three daughters of Orval Pool, deceased, and the husbands, respectively, of each of the three daughters. The contract was by and between these parties; it was for their benefit and the benefit of the children of two of the daughters.

For this agreement there was as between the parties who

made it, a valuable consideration. Such consideration moved from the parties to it, and in no part from any of the beneficiaries by whom it was not signed.

The decree of the Circuit Court contains therein the following recital as to the effect of the contract of November 2, 1871 :

"The court further finds that on the 2d day of November, 1871, by virtue of the contract that day made and delivered by Marshall M. Pool, Augusta M. P. Townshend, Mary Pool Docker and Ellen P. Peeples, and set forth in the original bill herein, an equitable title on. one-fourth of the entire estate, real and personal, of which Orval Pool died seized, vested in each of said parties; and that by virtue of said contract, the one-fourth interest of said Mary Pool Docker, and of Ellen P. Peeples, respectively, in said entire estate, was limited to them during their respective lives, with remainder to their children; and that the parties thereto intended and did create an executed trust,   *   *   * and that no contract made by said parties subsequent to the said contract of November 2, 1871, could in any manner affect the rights of the owners of the estate in remainder in the estate of Orval Pool, deceased."

Whatever was given by the contract of 1871 to the children of Mary Pool Docker and Ellen Pool Peeples, respectively, was a gift to said children; a gift which the parties to the agreement agreed among themselves should be made. Such agreement being made as between the respective donors, upon a good and valuable consideration, could, as between them, have been enforced. Yet it was none the less to the children of Mary and Ellen a gift; such children gave nothing, promised nothing, suffered nothing for the contract under which it was agreed that they should share in the estate of their grandfather.

The present suit is, as we have said, not to enforce the contract of 1871; the validity of that agreement is not in dispute. We are rather asked to say what was the effect upon the agreement of 1871, of the contract of 1872, in which all the parties to the first compact joined.

It is well settled that a court of chancery will not enforce an uncompleted gift.   Badgley et al. v. Votrain, 68 Ill. 25; Adams' Equity, 79; Tiffany & Bullard on Trusts and Trustees, 37; Wadhams v. Gay, 73 Ill. 415–431, 432.

A gift can only be effectual after the intention to make it has been followed by actual delivery of possession or some equivalent act.   Bispham's Equity, 66, 5th Ed.

Was the gift contemplated by the contract of 1871 so far completed that it could not be revoked by the agreement of all the parties to that compact ?

To constitute a gift *inter vivos* the rule is universal that everything necessary to a complete transfer of the title of the donor must have been made.   Volunteers have, as against a mere donor, no equity.   Tiffany & Bullard on Trusts and Trustees, 501.

So long as a gift is incomplete there is a *locus pœnitentiœ*. Wadhams v. Gay, 73 Ill. 415–432.

A true and proper gift or grant is always accompanied with delivery of possession and takes effect immediately. Bispham's Equity, 66.

A court of equity will, at the suit of volunteers, enforce trusts created for their benefit, but it will not complete imperfect gifts, or compel specific performance of promises made without consideration.   Lewin on Trusts, 69–75; Jones v. Lock, 1 Ch. App. 28; Vaizey on Settlements, Vol. 1, 92; Adams' Equity, 80.

Where the owner and holder of the legal title to property, by a formal declaration of trust, which purports to be and is a complete transaction, assumes the character of trustee of such property, for the benefit of those to whom he gives it and whom he thus makes *cestuis que trust* of the same, a court of equity will enforce the trust.   Meek v. Kettelwill, 1 Hare 464; Adams' Equity, 80; Lewin on Trusts, 67.

The distinction between such declaration of trust and a mere statement that the donor gives, sets apart or settles property upon another, is obvious.

The legal title being in him, the donor has to complete his gift, but to declare that he holds the property in trust

for another to whom he gives the use. A perfected trust is thus created; but if the owner do merely declare that he gives, sets apart and settles, without making delivery of possession or transfer of title, no trust is created; in order to perfect a trust it is necessary that he do more; that he surrender possession, or in an appropriate manner transfer the legal title to some one who is to hold it for the donee.

A mere intention to give or transfer does not amount to a transfer, neither does it create a trust. Nilroy v. Lord, 4 De G., F. & J. 264; Vaizey's Law of Settlements, Vol. 1, 93–145; Beach v. Keep, 18 Beavan, 285; Bridge v. Bridge, 16 Beavan, 315; In re D. Angiban, 15 Ch. Div. 228–242; Jeffreys v. Jeffreys, 1 Cr. & Ph. 138; Colyear v. Countess of Mulgrave, 2 Kean, 82; Young v. Young, 80 N. Y. 422.

In the present case it appears that when the agreement of 1871 was made, by the will of Orval Pool certain lands of the value of over $9,000 had been devised to Ellen Pool Peeples and Mary Pool Docker for life, remainder to their children. The interest of such children in these lands could not be and was not affected by either agreement. Neither could the wife and children of Orval Pool constitute George Potter trustee of the interest in remainder of the children of Mary Peeples and Ellen Docker.

The estate of Orval Pool, deceased, to arrange for an equal division of which the agreement of 1871 was made, consisted principally of real estate and bank stock. No attempt was made by this agreement to transfer the title to any portion of the estate. The title remained, after as before the agreement, where the will of Orval Pool had placed it.

The agreement contemplated the appointment of a trustee and the conveyance to him within a reasonable time of the interest of Mary Pool Docker and Ellen Pool Peeples in the moneys, personal property and proceeds of real estate that might be converted into money as provided in the agreement. The trustee was to have power, and it was made his duty to convert into money enough of the lands of the estate to equalize the shares of the children of Orval Pool

in his estate, but the title to the property was not placed in the trustee or conveyed at all; on the contrary the agreement provides that Marshall M. Pool and Augusta M. Pool Townshend shall join with the trustee in the conveyance of lands by him sold.

It is manifest, that except by conveyance and assignment by Marshall M. Pool and Augusta M. Pool Townshend, the trustee could not obtain and so hold for the benefit of Ellen Pool Peeples and Mary Pool Docker or their children, the estate which, under the agreement, they were to have.

If, after the making of the agreement, the two children of Orval Pool to whom the bulk of the estate was devised, had refused to go on with the arrangement, only by the aid of a court of equity, compelling conveyance and assignment, could Mary and Ellen have obtained the equal shares which under the contract they were to have?

We have, then, here, an incomplete and imperfect gift by the widow and four children of Orval Pool to the children of Mrs. Peeples and Mrs. Docker; a contract made which was reversible by those by whom it was entered into. It was therefore competent for the parties to, as they did, in 1872, make a new agreement changing the duties and trusts of the trustee who had been selected, and for whom appellants had become bound.

The effect of this was to discharge the sureties, who had undertaken for the conduct only of the trustees under the trusts imposed by the arrangement made in 1871.

The decree of the Circuit Court is reversed and the bill dismissed as to the appellants.