Simon Deimel et al.

v.

Willard S. Brown et al.

35 303
136s 586
35 303
73 127
35 303
77 350

*Creditors' Bill—Answer under Oath—Books of Account—Mutilation of—Evidence.*

1.  A book of account undeniably mutilated is unentitled to credit.

2.  Upon a creditors' bill filed for the purpose of reaching funds alleged to be due from defendants to a third person, said bill calling for answer under oath as to whether payment had been made by defendants for certain goods purchased by them from such third person, and if so, in what manner, this court holds, that the answer alleging payment is evasive and not responsive to the interrogatory; that the form of the oath makes the whole answer on information and belief, there being no way of distinguishing between the matters so stated, and those of which defendants had knowledge; that the answer is only to be treated as a pleading setting up affirmative matter of defense to be duly proved; that the evidence does not justify the claim of payment, and declines to enterfere with the decrees in behalf of the plaintiffs.

[Opinion filed January 29, 1890.]

Appeal from the Superior Court of Cook County; the Hon. Egbert Jamieson, Judge, presiding.

Messrs. Moses, Newman & Pam, for appellants.

Messrs. Tenney, Hawley & Coffeen, Cratty Bros. & Ashcraft and E. C. Crawford, for appellees.

Gary, P. J.   The appeal in this case is by the consent of the parties treated as one, though in fact there were several decrees in the Superior Court in favor of different judgment creditors of Jacob Biersdorf.   There is but one issue in the case.   Appellants admit that in February, 1884, they bought from Biersdorf goods to the value of $14,700.   If they ever paid for them, these decrees are wrong, if not, right.

The bill called for answer under oath, and contained this interrogatory:

"4th.  Has said plush ever been paid for, and if so, when and in what manner; if in cash state how much cash was paid and whether in currency or check and when such payment was made; if in merchandise, state what the merchandise consisted of, its value and the specific dates when such articles were delivered to said Biersdorf.  If paid by offsetting mutual accounts, state when such settlement was made, how much said Biersdorf then owed you, the nature of such indebtedness; if any part thereof was for money advanced, when such advance was made, the amount thereof, and whether in currency or by check; if any part thereof was for merchandise sold said Biersdorf, state fully the items, giving the dates and amounts of each sale and the nature of the articles sold."  To which the appellant answered :

"4th.  To interrogatory 4 they say that said plush has been paid for in the following manner : Said Jacob Biersdorf on or about the 29th day of January, 1884, purchased from these defendants lumber and merchandise to the amount of about $12,787, and on February 7, 1884, to the amount of about $5,502.50 and afterward became indebted upon other transactions to these defendants in the sum of about $1,000, and that said accounts were adjudged and set off against each other and the difference paid these defendants in cash or notes which were afterward paid by said Biersdorf.  That said settlement was made in September, 1884, and that at that time said Biersdorf was indebted to these defendants in the sum of about $19,000."

The effect of that answer as evidence for the appellants is an important question in this case.  The oath of the appellants is an important question in this case.  The oath of the appellants to it is, that they have heard it read, and know the contents, " and that the same is true, except as to the matters therein stated on information and belief, and as to those matters, they believe it to be true."

The appellants are three—Joseph, Rudolph and Simon. The appellees put in evidence the answer the three had made as garnishees in another suit against Biersdorf, in which Rudolph and Simon had said that they were not personally

familiar with the matters which form the subject of the interrogatory and answer quoted.

In this case Joseph, as a witness, testified; and without repeating at large his testimony, it is enough to say that while in general terms, he insists that in September, 1884, his firm and Biersdorf had a settlement, in which Biersdorf was found indebted to them several thousand dollars, which he paid, yet as to all details of their dealings, he reiterates, over and over, that without his books he can not tell anything about the matter—that he does not remember—and that most of the books have been destroyed by fires. The bookkeeper of the appellants and his assistant were witnesses, and by their testimony the alleged destruction of the books is disproved; they were preserved in vaults. A ledger only was produced, and in it were two entries, which, if true, would dispose of this case. Biersdorf is charged, 1884, January 29, Reg. 1, 557, $12,787; February 7, Reg. 1, 571, $5,502.50.

No other book was produced, and no witness could give any definite account of any transactions to which those charges could relate. It was in evidence that the books from which the ledger entries should have been made, had been mutilated by the appellants. Leaves were taken out, others inserted in their places and colored to correspond with those not removed, and new entries, variant from the original ones, made upon the substituted leaves.

Some of these removed leaves were produced by the bookkeeper, and on one of them, with the date of January 28th, appears what seems to be an order from Biersdorf for 200 pieces of plush at $1.55 per yard, but no number of yards is shown, or any aggregate amount stated. From such an entry nothing could be posted to the ledger. This record contains no such evidence as would warrant a finding that those plushes had been paid for, if the answer of the appellants is to be treated only as a pleading, and not as evidence. Now as to that answer, it is evasive and not responsive to the interrogatory. It gives no detail as therein called for. 1 Daniell's Chy. Prac. 844, with a great collection of cases in notes.

The form of the oath makes the whole answer on informa-
tion and belief, as there is no way of distinguishing between
the matters so stated and those of which the appellants had
knowledge.   The affidavits of Rudolph and Simon to their
answer as garnishees, and the testimony of Joseph as a witness
in this case, show that they had no such knowledge at the time
the answer in this case was made, as would be necessary to
make the answer evidence even if it had been responsive and
positively sworn to.   Fryrear v. Lawrence, 5 Gilm. 325.

The transactions between the appellants and Biersdorf,
whatever they were, occurred from January to September,
1884.   They answered as garnishees, in November, 1885.
The next month they answered the original bill in this case,
and in March, 1886, made the answer now under consideration.

It would seem that they had had sufficient occasion to
consider their relations with Biersdorf, to remember all they
ever knew about them, and to enable them to state clearly
and definitely what they were.   Upon the whole matter, the
answer is only to be treated as a pleading, setting up affirma-
tive matter of defense, to be proved by the appellants.   Pan-
key v. Raum, 51 Ill. 88; Clements v. Moore, 6 Wall. (U. S.)
299; Hart v. Ten Eyck, 2 Johns. Ch. 62.

Without attempting any summary of the voluminous evi-
dence in this record, it is enough to say that it contains
nothing that can be regarded as trustworthy proof of that
defense.   The case is not like Gage v. Parmlee, 87 Ill. 330,
where it is held that the destruction of his books by the
defendant did not supply the lack of affirmative evidence of
the case of the complainant.   Here the case is made out on
behalf of appellees by showing their judgments and execu-
tions, and tracing property of Biersdorf into the possession of
the appellants.   Why they should not now account for the
value of it, is for them to show.   The undenied mutilation of
their books of original entry is a circumstance so suspicious
in itself, that whatever credit might otherwise be attached to
the ledger is destroyed.

It may be that both sides of the account between the
appellants and Biersdorf were fictitious; there are some

circumstances stated, and allusions made, in the brief of the appellants, which seem to be intended to draw the attention of this court to the interest that one, not a party to this litigation, has in establishing that theory; and it urges that the appellees "can not have a decree unless the evidence warrants it, simply because appellants (in some other direction) may have done wrong."

All this is not very clear, but whatever is meant by it, the admission in the pleadings here by the appellants, that they bought from Biersdorf $14,700 in value of goods, is conclusive on that fact for the purposes of this case.

The finding in the declaratory part of the decree that the appellants owed to Biersdorf interest on the $14,700, is immaterial, as the total amount· to be paid to all the appellees is less than $14,700.

When other creditors of Biersdorf apply for relief on that decree, its correctness will be an open question. Wadhams v. Gay, 73 Ill. 415.

There is no error, and the decrees are all affirmed.

*Decrees affirmed.*